1   Karineh Khachatourian (Admitted *Pro Hac Vice*)
    karinehk@rimonlaw.com
2   **RIMON, P.C.**
    2479 E. Bayshore Road, Suite 210
3   Palo Alto, California 94303
    Telephone: 650.461.4433
4   Facsimile: 650.461.4433

5   David A. Carroll (NSB #7643)
    dcarroll@rrsc-law.com
6   Anthony J. DiRaimondo (NSB #10875)
    adiraimondo@rrsc-law.com
7   **RICE REUTHER SULLIVAN & CARROLL, LLP**
    3800 Howard Hughes Parkway, Suite 1200
8   Las Vegas, Nevada 89169
    Telephone: (702) 697-6116
9   Facsimile: (702) 732-7110

10   *Attorneys for Defendant,*
    *Sony Interactive Entertainment LLC*

11

12

13             **UNITED STATES DISTRICT COURT**

14                   **DISTRICT OF NEVADA**

15                     **\* \* \* \* \***

16   ESC-TOY LTD., a Nevada corporation,           Case No. 2:20-cv-00726-GMN-VCF

17               Plaintiff,                   **DEFENDANT SONY INTERACTIVE**
                                      **ENTERTAINMENT LLC'S**
18           v.                       **MOTION TO DISMISS AND MOTION TO**
                                          **STRIKE**
19   SONY INTERACTIVE ENTERTAINMENT
    LLC, a California limited liability company,     *REDACTED [ORIGINAL FILED UNDER*
20                                         *SEAL AS ECF NOS. 25 & 26]*
              Defendant.
21

22

23

24

25

26

27

28

1    Defendant Sony Interactive Entertainment LLC ("Sony" or "Defendant") hereby moves to

2  dismiss the First, Second, Third, and Fourth Causes of Action contained in Plaintiff ESC-Toy

3  Ltd.'s ("Plaintiff" or "ESC") Complaint (ECF 1), as well as ESC's claim for consequential

4  damages, because they fail to state a claim upon which relief can be granted.

5    As set forth herein, Plaintiff's First Cause of Action for Breach of Oral Contract must be

6  dismissed because

7    (1) the claim is barred by an integration clause in an underlying written contract that

8  prohibits oral modifications, and

9    (2) the claim is barred by the statute of frauds and other similar writing requirements.

10    Plaintiff's Second Cause of Action for Unjust Enrichment must be dismissed because an

11  action based on a theory of unjust enrichment is not available when there is an express, written

12  contract, because no agreement can be implied when there is an express agreement.

13    Plaintiff's Third Cause of Action for Breach of the Implied Covenant of Good Faith and

14  Fair Dealing must be dismissed because (1) the claim is nothing more than a restatement of

15  Plaintiff's two breach of contract claims; and (2) both underlying contract claims fail.

16    Plaintiff's Fourth Cause of Action for Breach of Written Contract must be dismissed

17  because (1) the claim is barred by a clause to an underlying written contract that prohibits

18  modifications that are not reduced to a signed writing, and (2) the claim is barred by the statute of

19  frauds and other similar writing requirements.

20    Finally, Plaintiff's claim for consequential damages must be dismissed because it is barred

21  by the parties' underlying written contract which prohibits recovery of such damages.

22    Sony's Motion to Dismiss and Strike is made and based upon the accompanying

23  Memorandum of Points and Authorities, the concurrently-filed Declaration of Karineh

24  Khachatourian ("Khachatourian Decl."), including exhibits to the Declaration, and all pleadings

25  and papers on file herein.[1]

26

27  _____

[1] On June 2, 2020, ESC dismissed its unrelated contract claims against Insomniac Games, Inc.
28  without prejudice.  ECF 19.  ESC subsequently indicated to Sony that it would amend its
Complaint to remove allegations against Insomniac but ultimately reneged on its agreement.

1
2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

3       Plaintiff ESC-Toy Ltd. ("ESC") is attempting through this litigation to convert a failed

4   business pitch into an exclusive contract to design and make collectible pins based on SIE's

5   intellectual property.  ESC vaguely alleges either an oral agreement, or, alternatively, an unsigned

6   written agreement cobbled together from various unidentified communications.  However, as set

7   forth more fully below, ESC's claim of an exclusive contract is in direct conflict with an existing

8   **non-exclusive** contract between ESC and SIE, which contract ESC expressly acknowledges and

9   references in its Complaint.  As a result, under the terms of the existing non-exclusive agreement

10  between ESC and SIE, ███████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████████, which

12  ESC acknowledges is not the case.

13      In 2014, Sony entered into a merchandise licensing agreement with ESC, ████████████

14  ████████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████

16  ██████████████ (the "2014 MLA").  █████████████████████████████████

17  ███  Over the years the parties entered into written and signed amendments to the licensing

18  agreement that ██████████████████████████████████████████████████

19  ███████████████████████████.  █████████████████████████████████████

20  ████████████████████████████████████████████████████

21  ████████████████.

22      ESC now brings claims of breach of contract, alleging that the written and signed 2014

23  MLA was modified by a 2018 oral agreement which granted ESC an exclusive license to design

24  and manufacture collectible pins for Sony and expanded the scope to include all of Sony's

25  trademarks.  ESC alleges that Sony breached this agreement by allowing others to market

26  collectible pins incorporating Sony's trademarks.  But the 2014 MLA ██████████████████

27  █████████████████████████████████.  Under California law, which

28  the parties agreed applies, ESC's written contract claims based on an unsigned modification

1  consisting of unspecified emails and other communications are barred, and its claims must be

2  dismissed because it has not plausibly alleged breach of a written contract.  And ESC's contract

3  claims are also barred by the statute of frauds, which requires a signed agreement for contracts that

4  cannot be performed within one year.  Moreover, Section 204(a) of the Copyright Act provides

5  that an exclusive license be in writing signed by the owner of the rights conveyed.  Further, ESC's

6  claim for a breach of the implied covenant of good faith and fair dealing must be dismissed

7  because the underlying contract claims fail and the claim is nothing more than a restatement of its

8  breach claims, which is insufficient.  Finally, ESC's claim for consequential damages must also be

9  dismissed because the 2014 MLA prohibits recovery of such damages.

10        ESC's entire cause of action is just the sort of mischief that prudent contracting parties try

11  to avoid through merger clauses, limitations on liability, and prohibitions against unwritten and

12  unsigned modifications to agreed-upon contracts.  As noted above, what ESC tries to do in its

13  Complaint is convert a failed business pitch into a formal contract with an exclusivity provision.

14  The terms of the 2014 MLA are clear and designed to prevent false claims such as these: ▌▌▌▌

15  ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

16  ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

17  ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌.  ESC makes no allegation that this was ever done; rather,

18  despite the 2014 MLA and other written agreements executed by Sony and ESC over a period of

19  eleven (11) years,  ESC now alleges oral agreements and amendments that contradict the express

20  terms of the 2014 MLA, and accordingly its related claims must be dismissed.

21  **II.    MOTION TO DISMISS**

22        **A.    Legal Standard**

23        A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief

24  can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and

25  plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2);

26  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed

27  factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the

28  elements of a cause of action." *Twombly*, 550 U.S. at 555.  In assessing the sufficiency of a

1  complaint, a district court must accept as true all well-pled factual allegations in the complaint;

2  however, legal conclusions are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S.

3  662, 679 (2009).  And the court need not "accept any unreasonable inferences or assume the truth

4  of legal conclusions cast in the form of factual allegations." *Brown v. Elec. Arts, Inc.*, 724 F.3d

5  1235, 1248 (9th Cir. 2013) (quotation omitted); *see also Sprewell v. Golden State Warriors*, 266

6  F.3d 979, 988 (9th Cir. 2001).

7          To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter,

8  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678

9  (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible when the factual content

10  "allows the court to draw the reasonable inference that the defendant is liable for the misconduct

11  alleged." *Id.*  While the plausibility standard is not a probability requirement, "[w]here a

12  complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the

13  line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and

14  citation omitted).  Deciding whether a claim is plausible is a "context-specific task that requires

15  the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation

16  omitted).  When the claims in a complaint have not crossed the line from conceivable to plausible,

17  plaintiff's complaint must be dismissed. *Twombly*, 550 U.S. at 570.

18          In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look

19  beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.

20  2003).  "A court may, however, consider certain materials—documents attached to the complaint,

21  documents incorporated by reference in the complaint, or matters of judicial notice—without

22  converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City

23  of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).  And "[courts] are not required to accept as true

24  conclusory allegations which are contradicted by documents referred to in the

25  complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998).

26          **B.     ESC Has Not Plausibly Alleged Breach of an Enforceable Contract**

27          This Court should dismiss ESC's claims for breach of oral and written contracts for

28  lacking plausible factual allegations for two reasons.  First, ESC's claims are based on an

1 | allegation that Sony breached an agreement (or agreements), allegedly made in 2017, that ESC

2 | would be the *exclusive* provider of collectible pins for all of Sony's videogame intellectual

3 | property by allowing other parties to provide such pins.  But according to ESC's own allegations,

4 | the parties already had a written and signed merchandise licensing agreement (entered into in

5 | 2014) ███████████████████████████████████████████████.

6 | ████████████████████████████████████████████████████

7 | ██████████████████████████████████████████.  Second, ESC's claims

8 | are barred by the statute of frauds because the alleged contracts could not be performed within one

9 | year.  Even if they could be performed in less than one year, ESC's claims are separately barred by

10 | the requirement that exclusive licenses be in writing signed by the owner.

**1.    The 2014 Merchandise Licensing Contract Can Only Be Modified By a Signed Writing**

12 | On January 15, 2014, the parties entered into a written contract ████████████████

13 | ██████████████████████████████████████████

14 | ███████████.  Khachatourian Decl. Ex. A (2014 MLA).  ████████████████████

15 | ████████████.  *Id.*, at 14 (2014 MLA, § 16.4).[2]  By its terms, ███████████████

16 | ████████.  *Id.*, at 15 (2014 MLA, § 16.7).[3]  A claim for breach of contract under California law

17 | consists of: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the

18 | defendant; and (4) damage resulting from the breach.  *First Cmty. Mortgage Co. v. Reece*, 89

---

21 | [2] This Court may take judicial notice of this contract in deciding Sony's Motion to Dismiss

22 | because it was incorporated by reference in ESC's Complaint.  Compl. at ¶¶ 42-47, 62; *see Ritchie*, 342 F.3d at 908; *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018)

23 | ("[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only

24 | portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.").

25 | [3] ████████████████████████████████████████████████████

26 | ████████████████████████████████████████████████████

27 | ████████████████████████████████████  Khachatourian Decl. Ex.

28 | A,  at 15 (2014 MLA,§ 16.7).  ████████████████████████████

1   Cal.App.4th 731, 745 (Ct. App. 2001).  ESC also alleges that the 2014 agreement was extended by

2   various "MLA Amendments" (Compl. at ¶ 44), which this Court may also take judicial notice of.

3   Khachatourian Decl. Ex. B ("First MLA Amendment"); *id*. Ex. C ("Second MLA Amendment").

4   Sony refers to the 2014 agreement and its amendments collectively as the "2014 MLA."  Although

5   ESC does not allege breach of the 2014 MLA, as will be explained below, ESC crafted its

6   allegations in a failed attempt to avoid provisions of the 2014 MLA that bar its breach of contract

7   claims.

8          The 2014 MLA ███████████████████████████████████████████████

9   ███████████████████████████████████████████████████████████████

10  ██████████████.  *Compare* Khachatourian Decl. Ex. A, at 2 (2014 MLA's ███████

11  ███████████████████████████████████)  *with* Compl. at

12  ¶¶ 67-74; ¶ 70 ████████████████████████████████

13  ███████.  ████████████████████████████████.  Khachatourian Decl. Ex. B, at 1

14  (First MLA Amendment, § 1 ██████████████████████████  This

15  overlap is important for at least two reasons.  First, the 2014 MLA ███████████

16  ██████████████████████████████████████████████████████████

17  ██████████████████████████████████████████████████████████

18  ██████████████████████████████.  Khachatourian Decl. Ex. A, at 2

19  (2014 MLA, Merchandise Schedule, § 10 ███████████████████); *id*., at 4

20  (2014 MLA, §§ 1.1-1.3); *id*. Ex. C, at 1 (Second MLA Amendment, § 9 ██████████

21  ████████████████).  Second, the MLA also expressly states ████████████

22  ██████████████████████████████████████████████████████████

23  ██████████████████████████████████████████████████  *Id*.

24  Ex. A, at 10 (2014 MLA, § 10.11).  Third, Section 16.4 of the 2014 MLA sets forth that ███

25  ██████████████████████████████████.  *Id*., at 14 (2014 MLA, § 16.4

26  ██████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████).

28         At bottom, ESC is alleging that the parties modified the 2014 MLA by Sony (1) granting

1  ESC exclusivity to design, manufacture, and provide Sony with collectible pins and (2) vastly

2  expanding the scope of the MLA license for collectible pins to include "*all* hardware, peripheral,

3  and game intellectual property owned by SIE." Compl. at ¶ 104 (emphasis added). ESC argues

4  that the alleged modification was made either (1) orally through various alleged statements made

5  in or around June – October 2017 (*id.*, ¶¶ 68-74); or (2) through an alleged written agreement

6  embodied across "various writings" that ESC alleges may be in "the combined possession of ESC

7  and SIE" or, alternatively "in the possession of SIE." *Id.*, at ¶ 123. But given Section 16.4 of the

8  2014 MLA, under California law ESC can only maintain a claim based on an alleged modification

9  to the 2014 MLA if it also alleges that the modification was memorialized with a signed writing.

10  Because ESC has not alleged (and cannot allege) that any such *signed* writing was made, its

11  contract claims are barred.

12  California Commercial Code Section 2209(2) governs contract clauses that restrict future

13  modifications: "A signed agreement which excludes modification or rescission except by a signed

14  writing cannot be otherwise modified or rescinded …." Cal. Comm. Code § 2209(2). California

15  law "allows oral modification of a written contract only if the written contract does not provide

16  otherwise." *Fanucchi & Limi Farms v. United Agri Prods.,* 414 F.3d 1075, 1081 (9th Cir. 2005)

17  (citing Cal. Civ. Code § 1968(b)); s*ee also Marani v. Jackson,* 183 Cal.App.3d 695 (Ct. App.

18  1986) (noting that oral modification of a written contract is allowed only if "the written contract

19  does *not* contain an express provision requiring that modification be in writing") (emphasis

20  added).

21  A similar no-modification clause was at issue before the 9th Circuit in *Stanley v. Univ. of

22  S. California*, 178 F.3d 1069 (9th Cir. 1999). In *Stanley*, the plaintiff argued that an implied-in-

23  fact contract was formed because her employer allegedly led her to believe that if she produced a

24  successful basketball program, she would be awarded a multi-year contract. *Id*. at 1078. The 9th

25  Circuit upheld the district court's grant of summary judgment in the defendant's favor because the

26  express terms of the employment contract "precluded any modification of the agreement unless it

27  was in writing and signed by both parties." *Id.* Courts in the 9th Circuit have also granted

28  motions to dismiss where the plaintiff's breach of contract claim depended upon an alleged oral

1    modification that was barred by the underlying written contract. *Harrison Ventures, LLC v. Alta*
2    *Mira Treatment Ctr., LLC*, No. C 10-00188 RS, 2010 WL 1929566, at *3-5 (N.D. Cal. May 12,
3    2010).

4         Further, the 2014 MLA's modification clause cannot be overcome by allegations regarding
5    the parties' course of performance. *Vizio Inc. v. Gemtek Tech. Co.*, No. SACV13160JLSRNBX,
6    2014 WL 10538995, at *3 (C.D. Cal. Aug. 27, 2014); *see also Lonely Maiden Prods., LLC v.*
7    *GoldenTree Asset Mgmt., LP*, 201 Cal. App. 4th 368, 378 (Ct. App. 2011). And while ESC does
8    not appear to allege that the parties modified the 2014 MLA prior to or contemporaneous with its
9    execution via oral agreement or another writing, any such allegations would also be ineffective as
10   ████████████████████████████████████████. Khachatourian Decl. Ex. A,
11   at 15 (2014 MLA, §16.10 ████████████████████████████████████████
12   ████████████████████████████████████████████████████████████
13   ████████████████████████████████████████████████████████████
14   ███████████████); *id.* Ex. C, at 1 (Second MLA Amendment █████████████████
15   ████████████████████████████████████████████████████████
16   ████████████████████████████████████████████████████████████
17   ████████). Merger clauses are "generally conclusive on the issue of integration." *IIG Wireless,*
18   *Inc. v. Yi*, 22 Cal. App. 5th 630, 640 (Ct. App. 2018).

19        Between the 2014 MLA's ████████████████████████████, this case is just like
20   *Stanley* where the employment contract was integrated and also prohibited modification without a
21   signed writing. In *Stanley*, the court found that "no rational trier of fact" could find for the
22   plaintiff on her implied-in-fact contract claim that would have directly contradicted the terms of
23   her express written contract. As should be the result here. ESC's claim for breach of an oral
24   contract is based on allegations of an *exclusive* contract ████████████████████████████
25   ████████████████████████. But ESC's allegations *expressly* contradict ████████████
26   ████████████████████████████████████████████████████████
27   ████████████████████████████████████████████████
28   ████████████████████████. *See, e.g.*, Khachatourian Decl. Ex. A, at 2-3 (2014

1   MLA, Merchandise Schedule); *id*. Ex. B (First MLA Amendment); Ex. C (Second MLA

2   Amendment). And Section 10.11 expressly stated that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id*. Ex. A, at 10 (2014 MLA, §

4   10.11).  In view of ▮▮▮▮▮▮▮▮▮▮▮▮▮, Section 16.4 of the 2014 MLA, ESC could only

5   maintain this claim if it plausibly alleged that Sony signed a writing expressing the alleged

6   modifications.  But ESC did not do so, only vaguely alleging that an agreement is "embodied in

7   various writings from communications, notes, memorandums, presentations, and all other forms of

8   written documentation."  Compl. at ¶ 123.  Critically, ESC does not allege that any of these

9   "various writings" are signed by Sony.  This is fatal to ESC's claim.  And ESC's allegations are

10  even more implausible considering the lack of any concrete descriptions and ESC's confusion

11  over even the possible location of such documents.  *Id.*, (speculating that the documents are "in the

12  combined possession of ESC and SIE or, in the alternative, in the possession of SIE.").

13            **2.      ESC's Contract Claims are Barred by the Statute of Frauds**

14            In California, the statute of frauds requires that "[a]n agreement that by its terms is not to

15  be performed within a year from the making thereof" be reduced to writing and signed by the

16  party alleged to have breached.  Cal. Civ. Code § 1624.  ESC's contract claims are barred by this

17  provision of the statute of frauds because the alleged contracts could not be performed within one

18  year.  "The statute of frauds, while an affirmative defense, may be the proper subject of

19  a motion to dismiss where the defense is apparent on the fac[e] of the complaint …."  *Griffin v.*

20  *Green Tree Servicing, LLC*, No. CV1409408MMMVBKX, 2015 WL 10059081, at *8 (C.D. Cal.

21  Oct. 1, 2015) (quotation marks, citations, and brackets omitted); *see also Sanchez v. Aurora Loan*

22  *Servs., LLC*, No. CV1308846MMMRZX, 2014 WL 12589660, at *22 (C.D. Cal. June 10, 2014)

23  (granting motion to dismiss oral contract claim subject to statute of frauds).

24            As explained above, both of ESC's contract claims are based on alleged modifications of

25  the 2014 MLA that changed ESC's licensee status for collectible pins from non-exclusive to

26  exclusive and expanded the scope of the license to all of Sony's videogame intellectual property.

27  However, at the time of the alleged modification, October 2, 2017 (Compl. at ¶ 74), ▮▮▮▮▮▮

28  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and therefore

1   the contract could not be performed within one year.  As a result, the alleged modifications had to

2   be reduced to a signed writing or else they fail the statute of frauds.  *Secrest v. Sec. Nat'l Mortg.*

3   *Loan Tr. 2002-2*, 167 Cal. App. 4th 544, 553 (Ct. App. 2008), *as modified on denial of*

4   *reh'g* (Nov. 3, 2008) ("An agreement to modify a contract that is subject to the statute of frauds is

5   also subject to the statute of frauds.").  ESC does not allege that the purported modifications to the

6   2014 MLA were reduced to a signed writing, alleging alternatively an oral contract or an unsigned

7   written contract embodied in "various writings," thus its contract claims based on those purported

8   modifications are barred by the statute of frauds.[4]  Nor does ESC sufficiently identify these

9   writings or even if they exist.  ESC instead alleges, on information and belief, that the agreement

10  is embodied in "various writings from communications, notes, memorandums, presentations, and

11  all other forms of written documentation that are in the combined possession of ESC and SIE or,

12  in the alternative, in the possession of SIE."  Compl. at ¶123.

13          A similar fact pattern was considered in *Visioneer, Inc. v. KeyScan, Inc.*, 626 F. Supp. 2d

14  1018 (N.D. Cal.), *dismissed*, 370 F. App'x 87 (Fed. Cir. 2009).  There, a patentee had granted its

15  licensee a six-year, written, non-exclusive license to practice a patent.  *Id.* at 1025.  The licensee

16  alleged that the patentee orally agreed to amend the written license to convert the license into an

17  exclusive one.  *Id.*  The court found that because the written license term extended for more than

18  one year from the alleged oral modification, that "the oral exclusive license run afoul of the

19  Statute of Frauds."  *Id.*  The court proceeded to dismiss the licensee's claim of patent infringement

20

21  _____

    [4] ESC's oral and unsigned contract claims are also barred by Section 204(a) of the Copyright Act,
22  which requires exclusive licenses to be in writing.  *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748,
    754 (9th Cir. 2008) (citing 17 U.S.C. § 204).  ESC's allegations that it was to be the exclusive
23  licensee for collectible pins featuring Sony's copyrighted game characters, titles, and/or elements
    may be an independent reason that a written contract was required.  *See* Khachatourian Decl. Ex.
24  A, at 16 (2014 MLA, § 17.11 ███████████████████████████████████████████████████████
25  ██████████████████████████████████████████████████████████████████████████████████
    ██████████████████████████████████████████████████████████████████████).  To be
26  effective, the writing must be executed by the owner of the rights conveyed and must be
    contemporaneous with the agreement.  *See Kongsberg Int'l, Inc. v. Rice*, 16 F.3d 355 (9th Cir.
27  1994) (owner's letter written 3.5 years after alleged oral agreement not adequate.)  Therefore, even
    if the alleged oral exclusive agreement could have been performed within a year (and therefore not
28  subject to the statute of frauds), the claim still fails under Section 204(a) of the Copyright Act.

on the grounds that it could not establish itself as the exclusive licensee of the patent and therefore did not have standing. *Id.* at 1027; *see also Gate-Way, Inc. v. Hillgren*, 82 F. Supp. 546, 554 (S.D. Cal. 1949), *aff'd*, 181 F.2d 1010 (9th Cir. 1950) (finding an alleged oral license to a patent failed under the statute of frauds because the contract could not be performed within one year). ESC's breach of contract claims must be dismissed because the alleged modifications were not alleged to have been reduced to a signed writing and the alleged contracts could not be performed within one year.

### C.   ESC Has Not Plausibly Alleged Breach of the Implied Covenant of Good Faith and Fair Dealing

ESC fails to allege plausible facts sufficient to support a claim for breach of the implied covenant of good faith and fair dealing ("implied covenant") because (1) the claim is nothing more than a restatement of its breach of contract claims; and (2) ESC's underlying contract claims fail. The implied covenant is "implicit in every contract" (*Cates Constr., Inc. v. Talbot Partners,* 21 Cal.4th 28, 43 (1999)) and "imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,* 222 Cal.App.3d 1371, 1393 (Ct. App. 1990) (citations omitted). But "[i]f the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Id.* at 1395. And an action for the implied covenant cannot stand absent the existence of an underlying contract. *Smith v. City & Cty. of San Francisco,* 225 Cal.App.3d 38, 49 (Ct. App. 1990) ("The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract.").

ESC has not plausibly alleged facts showing that Sony frustrated ESC's rights to the benefits of the alleged contracts *in some other way*. *Thrifty Payless, Inc. v. Americana at Brand, LLC,* 218 Cal.App.4th 1230, 1244 (Ct. App. 2013). Because ESC's implied covenant allegations simply restate its claims for breach of contract—that Sony allowed others to make collectible pins

11

1    for it in violation of the exclusivity terms of ESC's purported 2017 contracts—it has not stated a

2    claim for breach of the implied covenant. *See, e.g.*, Compl. at ¶ 120 ("SIE unfairly interfered with

3    ESC's right to receive the benefits of the exclusivity term …."). This is insufficient. *See Careau*

4    *& Co.*, 222 Cal.App.3d at 1394-95; *see also Guz v. Bechtel Nat. Inc.,* 24 Cal.4th 317,327 (2000)

5    ("[W]here breach of an actual term is alleged, a separate implied covenant claim, based on the

6    same breach is superfluous.").

7         Further, because ESC has not plausibly alleged facts to support its contractual causes of

8    action, (*supra*,§ II(B)), its claim for the implied covenant must fail because "[w]ithout a

9    contractual underpinning, there is no independent claim for breach of the implied covenant."

10   *Fireman's Fund Ins. Co. v. Maryland Casualty Co.,* 21 Cal.App.4th 1586, 1599 (Ct. App. 1994);

11   *Smith,* 225 Cal.App.3d at 49. This Court should dismiss ESC's claim for a breach of the implied

12   covenant of good faith and fair dealing.

13        **D.    The 2014 MLA Bars ESC's Claim for Unjust Enrichment**

14        Whether under California or Nevada law, the 2014 MLA bars ESC's claim for unjust

15   enrichment. Under both California and Nevada law, an unjust enrichment claim is barred when

16   there is an underlying contract. *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151,

17   1167 (9th Cir. 1996) ("[U]njust enrichment is an action in quasi-contract, which does not lie when

18   an enforceable, binding agreement exists defining the rights of the parties."); *Lipshie v. Tracy*

19   *Investment Co.*, 93 Nev. 370, 379, 566 P.2d 819, 824 (1977) ("To permit recovery by quasi-

20   contract where a written agreement exists would constitute a subversion of contractual

21   principles."); *Leasepartners Corp. v. Robert L. Brooks Trust*, 113 Nev. 747, 755-56, 942 P.2d 182,

22   187 (1997). Here, ESC's unjust enrichment allegations concern ESC's alleged development of

23   collectible pins for Sony—

24   ████████████████. Compl. at ¶¶109-114. An additional reason for dismissal is that unjust

25   enrichment it is not a cognizable claim, "[u]njust enrichment is not a cause of action or even a

26   remedy but rather a general principle, underlying various legal doctrines and remedies. It is

27   synonymous with restitution." *Beard v. Int'l Bus. Machines Corp.*, No. C 18-06783 WHA, 2020

28   WL 1812171, at *7 (N.D. Cal. Apr. 9, 2020) (citation and quotation marks omitted). ESC's unjust

1  enrichment claims must be dismissed for either of these reasons.

2      **E.**    **ESC's Claim For Consequential Damages is Barred by the 2014 MLA**

3      ESC's Complaint includes a request for consequential damages, but that claim must be

4  dismissed because the 2014 MLA (upon which ESC's contract and implied covenant claims are

5  based) includes a limitation-on-liability clause that precludes such damages.  Challenges such as

6  this to a plaintiff's claim for damages are proper under Rule 12(b)(6).  *Centex Homes v. Everest*

7  *Nat'l Ins. Co.*, No. 216CV01275GMNCWH, 2017 WL 4349017, at *5 (D. Nev. Sept. 29, 2017)

8  ("[W]hen the defendant challenges of the sufficiency of the factual allegations supporting

9  damages, the motion should be made pursuant to Federal Rule of Civil Procedure 12(b)(6).").

10      Section 12 of the 2014 MLA states

11  .  Khachatourian Decl. Ex. A, at 11

12  (2014 MLA, § 12).  By its express terms

13  .  This is analogous to the situation in *Parlanti v. MGM Mirage*, No. 2:05-CV-01259-

14  ECR-RJ, 2007 WL 869600, at *9 (D. Nev. Mar. 20, 2007), where the court dismissed the

15  plaintiff's claim for consequential damages because they were not available under plaintiff's

16  ERISA claim.  In view of the 2014 MLA's , ESC has not plausibly

17  alleged a claim for consequential damages and the portions of ESC's claims requesting

18  consequential damages should be dismissed.  *Id.*

19

20  **III.**    **MOTION TO STRIKE**

21      **A.**    **Legal Standard**

22      Rule 12(f) permits the Court to "[strike] from any pleading … any redundant, immaterial,

23  impertinent, or scandalous matter."  "The function of a 12(f) motion to strike is to avoid the

24  expenditure of time and money that must arise from litigating spurious issues by dispensing with

25  those issues prior to trial."  *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993)

26  (quotations and citations omitted).  Immaterial matter is defined as matter that "has no essential or

27  important relationship to the claim for relief or the defenses being pleaded."  *Id.* at 1527.

28  Impertinent matter is defined as "statements that do not pertain, and are not necessary, to the

1   issues in question." *Id.*

2   **B.    This Court Should Strike ESC's Allegations Regarding Dismissed Defendant**
3             **Insomniac Games**

4   ESC's Complaint named Insomniac Games as a defendant for alleged breaches of two
5   contracts between those two parties (the "Insomniac Contracts"). *See, e.g.*, Compl. at ¶¶ 90-101,
6   129-134 (the "Insomniac Allegations"). On June 2, 2020, ESC dismissed its claims against
7   Insomniac without prejudice. ECF 19. ESC's claims against Sony and its dismissed claim against
8   Insomniac have nothing to do with each other, and ESC did not seek joint and several relief for
9   any of its claims against Sony and Insomniac. ESC does not allege that Sony was a party to the
10  Insomniac Contracts or is liable for their alleged breaches. Similarly, ESC does not allege that
    Insomniac had anything to do with ESC's allegations and causes of action directed at Sony.

11  This Court should exercise its discretion to strike ESC's Insomniac Allegations because
12  their continued inclusion in ESC's Complaint is confusing and inappropriate following ESC's
13  dismissal of Insomniac, which never even answered or otherwise responded to ESC's Complaint.
14  ECF 19. Moreover, on June 18, 2020, ESC, through its counsel, agreed to amend its complaint to
15  remove these allegations but then reneged at the eleventh hour. ("We will also agree to remove the
16  Insomniac allegations.")  Striking ESC's impertinent and immaterial allegations regarding
17  Insomniac now will spare Sony (and this Court) "the expenditure of time and money that [would]
18  arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy,*
19  *Inc.*, 984 F.2d at 1527 (9th Cir. 1993) (quotations and citations omitted); s*ee also Mireskandari v.*
20  *Daily Mail & Gen. Tr. PLC*, No. CV1202943MMMFFMX, 2013 WL 12129642, at *5 (C.D. Cal.
21  July 31, 2013) (striking allegations "[b]ecause plaintiff does not allege a cause of action based on
22  this purported conduct, the allegations are immaterial and impertinent"); *Shankar v. United States*
23  *Department of Homeland Security*, 2014 WL 523960, at *11 (N.D. Cal. 2014) (striking from
24  complaint references to similarly wronged but unspecified "others" because the lawsuit only
25  concerned conduct against plaintiff).

26  **IV.    CONCLUSION**

27  ESC's claims for breach of contract, breach of the implied covenant, unjust enrichment,

28

1   and for consequential damages are barred by the parties' 2014 MLA.  Under California law,

2   ESC's claims must be dismissed because there is no signed writing to avoid the 2014 MLA's

3   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Further, ESC's contract claims are

4   additionally barred by the statute of frauds.  Finally, ESC cannot recover consequential damages in

5   view of the 2014 MLA's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Respectfully, Sony's Motion to Dismiss

6   and Strike should be granted.

7   Dated:  June 24, 2020

8

9                                        By: */s/ David A. Carroll*
                                             Karineh Khachatourian (*Pro Hac Vice*) (CA Bar
10                                           No. 202634)
                                             Nikolaus A. Woloszczuk (*Pro Hac Vice*
11                                           *Forthcoming*) (CA Bar No. 286633)
                                             RIMON, P.C.
12                                           2479 E. Bayshore Road, Suite 210
                                             Palo Alto, CA 94303
13
                                             -and-
14
                                             David A. Carroll, Esq. (NSB #7643)
15                                           Anthony J. DiRaimondo (NSB #10875)
                                             RICE REUTHER SULLIVAN & CARROLL, LLP
16                                           3800 Howard Hughes Parkway, Suite 1200
                                             Las Vegas, Nevada 89169
17
18                                           *Attorneys for Defendant,*
                                             *Sony Interactive Entertainment LLC*
19

20

21

22

23

24

25

26

27

28

---

15

1

**CERTIFICATE OF SERVICE**

2
 I certify that I am an employee of Rice Reuther Sullivan & Carroll, LLP, and that a true

3
and correct copy of the foregoing **DEFENDANT SONY INTERACTIVE ENTERTAINMENT**

4
**LLC'S MOTION TO DISMISS AND MOTION TO STRIKE** was served via CM/ECF

5
electronic service on all parties registered to receive electronic notification and service in this case,

6
and unredacted copies of the sealed version of the foregoing (ECF Nos. 25 & 26) were provided

7
pursuant to LR IA 10-5 and IC 4-1(C):

8

David R. Wright (Pro Hac Vice)
dwright@mabr.com

9

Tyson K. Hottinger (Pro Hac Vice)
thottinger@mabr.com

10

111 South Main Street, Suite 600
Salt Lake City, Utah 84111

11

12

-and-

Richard F. Holley (NSB # 03077)
rholley@nevadafirm.com

13

400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101

14

15

16

_/s/ David A. Carroll_
An Employee of Rice Reuther Sullivan & Carroll, LLP
Dated: June 24, 2020

17

18

19

20

21

22

23

24

25

26

27

28