UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESC-TOY LTD., | Case No. 21-cv-00778-EMC (DMR) |
| Plaintiff, | |
| v. | **ORDER ON DEFENDANT'S MOTION TO COMPEL** |
| SONY INTERACTIVE ENTERTAINMENT LLC, | Re: Dkt. No. 244 |
| Defendant. | |

Defendant Sony Interactive Entertainment LLC ("SIE") moves to compel Plaintiff ESC-Toy Ltd. ("ESC") to produce documents withheld on the basis of the attorney-client privilege and work product related to third party attorney Shelly Gayner.  [Docket No. 244.]  This matter is suitable for determination without oral argument.  Civ. L.R. 7-1(b).  For the following reasons, the motion is granted in part and denied in part.

## I.     BACKGROUND

In this action, ESC sues SIE for breach of contract and related claims.  ESC "designs, creates, and manufactures collectible merchandise in the gaming and entertainment industries."  It was founded in 2005 by artist Erick Chatel aka Erick Scarecrow.[1]  Compl. ¶ 10.  SIE, a wholly-owned subsidiary of Sony Corporation of America, "is responsible for the PlayStation brand and services associated with the video game and digital entertainment industry."  *Id*. at ¶ 2.

Two contracts between the parties are relevant to ESC's claims: a written 2014 Merchandise License Agreement ("MLA") and a purported oral 2017 Exclusive Vendor Agreement ("EVA").  The MLA gave ESC a license to design, manufacture, and sell merchandise

---

[1] For efficiency and clarity, this order refers to Erick Chatel aka Erick Scarecrow as "Erick."

United States District Court
Northern District of California

1    associated with numerous PlayStation videogames.  Compl. ¶¶ 42-45.  According to ESC, in 2017

2    the parties entered into the EVA, an oral contract establishing that ESC would be the exclusive

3    vendor providing collectible pins to SIE.  *Id*. at ¶¶ 67-74.  ESC alleges that SIE breached the

4    exclusivity provision of the EVA.  *Id*. at ¶ 105.  SIE disputes the existence and/or enforceability of

5    the EVA.  [*See generally* Docket No. 27 (Def.'s Mot. to Dismiss).]

6         ESC filed the complaint in April 2020 in the United States District Court for the District of

7    Nevada.  SIE moved to dismiss and to strike portions of the complaint and later moved to transfer

8    the case to this district based on a forum selection clause in the MLA.

9         ESC opposed the motion to transfer, disputing the applicability of the forum selection

10   clause in the MLA.  ESC argued that the clause does not apply because the EVA (the contract that

11   SIE allegedly breached) is separate from the MLA, and therefore the MLA does not govern this

12   dispute.  SIE asserted that the EVA is an attempted modification of the MLA, which means the

13   forum selection clause in the MLA applies to this dispute.  [*See* Docket No. 115 (Jan. 21, 2021

14   Order) at 4-5.]

15        In opposing the motion to transfer, ESC submitted a declaration by attorney Shelly Gayner

16   (the "Gayner declaration").  [Docket Nos. 76 (Gayner Decl. Sept. 1, 2020); 245 (Khachatourian

17   Decl., July 28, 2022) ¶ 4, Ex. 1.]  In the declaration, Gayner explains that she started working at

18   Sony in 1998 as a Director of Legal & Business Affairs.  She held that position until 2007 when

19   she moved to Sony's business development department, where she was a Director of Licensing

20   from 2007 to 2014.  *Id*. at ¶ 1.  Gayner states that she "created the merchandise licensing program

21   that was in place at Sony in 2014," the year that ESC and SIE executed the MLA.  *Id*. at ¶ 3.  She

22   asserts that she was involved in the negotiation of the 2014 MLA and that based on her experience

23   as Sony's Director of Licensing, she "understand[s] the 2014 ESC MLA to be a separate and

24   distinct agreement" from the EVA.  *Id*. at ¶ 7, 9.

25        SIE moved to strike the Gayner declaration, arguing that Gayner worked for SIE as an in-

26   house attorney for sixteen years, that ESC knowingly obtained SIE's confidential information

27   from her, and that the information was subject to "ongoing confidentiality obligations."  [Docket

28   No. 85 (Mot. to Strike) 2.]  SIE argued that Gayner's declaration was "replete with information

United States District Court
Northern District of California

2

that SIE considers confidential and that should not have been disclosed and used in this litigation outside the formal discovery process, if at all." Mot. to Strike 4. SIE also challenged ESC's conduct in "obtain[ing] information from private consultation with a former employee and legal counsel outside the normal discovery procedures" and without any "apparent safeguards." *Id*.

ESC opposed the motion to strike the declaration, disputing that it disclosed confidential information and arguing that its contact with Gayner was "entirely proper." [Docket No. 105 at 1-2.] ESC contended that "Gayner was not a SIE employee when ESC filed this action and thus has no knowledge of any privileged communications regarding SIE's preparation for and defense of this action." *Id*. at 8. Accordingly, it argued, "ESC's contact with Gayner does not put ESC's counsel in a position to disclose or use SIE's privileged information to assist ESC. In other words, Gayner has no knowledge of this action . . ." *Id*. at 9.

In January 2021, the Nevada district court granted the motion to transfer and transferred the case to this district without ruling on the motion to strike Gayner's declaration. [Docket Nos. 115, 116.] The case was eventually assigned to the Honorable Edward M. Chen. [Docket No. 121.] At the May 2021 initial case management conference, Judge Chen denied the motion to strike Gayner's declaration as moot. [*See* Docket No. 128.] In July 2021, Judge Chen denied SIE's motion to dismiss in two separate orders. [Docket Nos. 164, 169.] In so doing, he found that "the EVA is a separate contract from the MLA rather than a modification of the MLA." [Docket No. 164 at 8.]

## A.     Gayner's Involvement in the Parties' Dispute and Discovery Relating to Her

Gayner became involved in the parties' dispute prior to submitting her declaration. In July 2019, Gayner sent a letter on ESC's behalf to SIE Senior Corporate Counsel Dan Herp. Khachatourian Decl. ¶ 6, Ex. 3 (Gayner Subpoena Attach. B, July 17, 2019 Letter). Gayner wrote to "Dan" about her "understanding that there is a current dispute between ESC Toy . . . and SIE." She communicated that "[b]ecause Erick and I are personal friends and because I helped establish the relationship between ESC and SIE, I wanted to send you a note . . . and provide input, from my personal perspective, on the quality of ESC as a licensee, their products, and Erick as an individual." Gayner provided a detailed history of the dealings between ESC and SIE and wrote,

3

United States District Court
Northern District of California

1  "I'm helping Erick communicate and tell his side of the story to you . . . [a]s you know, I'm not a

2  litigator."  She closed the letter by offering her assistance in "facilitating" a resolution of the

3  parties' dispute and helping to schedule a meeting with Erick.  July 17, 2019 Letter.

4       Gayner later testified at deposition that she and Erick "wrote [the July 2019 letter]

5  together" and that in so doing she was "not acting in an attorney capacity"; rather, she helped him

6  with the letter "[a]s his friend."  Khachatourian Decl. ¶ 7, Ex. 4 (Gayner Dep.) at 52-53.  She also

7  testified that following the July 2019 letter, at Erick's request, she participated in a call that

8  included Erick, ESC's attorney Innes Smolansky, and Dan Herp, and that Herp told her that she

9  "wasn't welcome to be on the call because [she] wasn't an attorney representing" Erick.  *Id.* at 99-

10  101.  According to Gayner, Erick knew that Gayner was "attending the call as his friend and not as

11  his attorney."  *Id.* at 101.

12       On June 3, 2021, ESC served Federal Rule of Civil Procedure 26(a) initial disclosures in

13  which it identified Gayner as a witness likely to have information relevant to the case:

14       Shelly Gayner is believed to have discoverable information about:
     ESC's development and creation of the PlayStation Pin Program; SIE
15       accepting and asking ESC to proceed with the PlayStation Pin
     Program and Exclusive Vendor Agreement; breach of the Exclusive
16       Vendor Agreement with ESC; and damages to ESC.

17  Khachatourian Decl. ¶ 20, Ex. 17 (Initial Disclosures).  This disclosure directly contradicts ESC's

18  prior representation that "Gayner has no knowledge of this action," made in ESC's opposition to

19  SIE's motion to strike the Gayner declaration.  [*See* Docket No. 105 at 9.]

20       Following the parties' unsuccessful attempts at an early settlement, discovery began in

21  early 2022.  SIE served discovery regarding Gayner's involvement in this dispute.  Khachatourian

22  Decl. ¶¶ 9, 10, Exs. 6, 7.  In response to an interrogatory asking ESC to "identify each person

23  employed by ESC or retained by ESC as counsel" who communicated with any third party about

24  ESC's dispute with SIE and/or this action, ESC identified "Innes Smolansky, Shelly Gayner, and

25  counsel of record in this action."  Khachatourian Decl. Ex. 6 (Response to Interrogatory No. 5).

26  This once again contradicted its prior representation that "Gayner has no knowledge of this

27  action."  ESC offers no explanation for these contradictions.

28       ESC asserted the attorney-client privilege in objecting to a Rule 30(b)(6) topic on "ESC's

4

relationship and Communication(s) with Shelly Gayner from January 1, 2017 to the present," but stated its willingness "to produce a designee to testify on its behalf with respect to non-privileged matters concerning ESC's relationship with Shelly Gayner." Khachatourian Decl. Ex. 7 (Resp. to Topic No. 22). The parties met and conferred about this deposition topic. [Docket No. 246 (Woloszczuk Decl., Jul. 28, 2022) ¶ 2.] According to a May 12, 2022 letter memorializing the meet and confer efforts, ESC appears to have changed positions yet again regarding Gayner's knowledge of the facts of this lawsuit. SIE's counsel wrote to MABR, "[d]uring meet and confer [about Topic No. 22], ESC stated that its position is that Gayner was ESC's attorney only for subject matter *that did not relate to SIE* and would not assert privilege over questions and communications relating to SIE." *Id*. at ¶¶ 2, 3, Ex. A (emphasis added). The letter requested that "[i]f our understanding of any of the representations above is incorrect on any of the above, please let us know immediately as we are relying on them." MABR never responded to the letter, Woloszczuk Decl. ¶ 3, but as explained below, it subsequently disavowed this position.

SIE served a subpoena on Gayner in March 2022. Khachatourian Decl. ¶ 6; Gayner Subpoena. The subpoena requested Gayner's appearance for a deposition and included 26 requests for production (RFPs). The RFPs included requests for communications between Gayner and any person including ESC about this action and the dispute underlying the action; contracts and drafts of contracts between Gayner and ESC; and drafts of and communications about the July 2019 letter that Gayner wrote to SIE on Erick's behalf. Gayner Subpoena. On March 24, 2022, MABR sent SIE objections to the subpoena "on behalf of" both ESC and Gayner, which included that "many of the document categories call for documents or information protected from disclosure by the attorney-client privilege or attorney work product doctrine." Khachatourian Decl. ¶ 11, Ex. 8.

The following day, SIE's counsel asked MABR to "please kindly confirm whether your firm represents Shelly Gayner as we need to know whether we can communicate with her directly." MABR responded, "our firm does not act as engaged legal counsel for Ms. Gayner." Khachatourian Decl. ¶ 12, Ex. 9.

At ESC's expense, Gayner retained Frank Ubhaus of Berliner Cohen LLP in connection

1   with SIE's subpoena to her.  [Docket No. 249 (Veverka Decl., Aug. 4, 2022) ¶ 9; Khachatourian

2   Decl. ¶ 13, Ex. 10 at ECF p. 3.]  Ubhaus communicated with MABR in April 2022 and asked

3   about the existence of an attorney-client relationship between Gayner and ESC:

> One issue I need you to address is whether an attorney-client
> relationship existed between ESC/Erik [sic] and Shelly and, if so,
> whether Erik [sic] wants to assert the privilege . . . [d]o you want to
> review [Gayner's] documents before we produce them and do you
> want to assert attorney-client privilege to any documents Shelly might
> produce or any testimony she might give?

8   Khachatourian Decl. Ex. 10 at ECF p. 5.  MABR's response on behalf of ESC is not in the record,

9   but Ubhaus later suggested that "we do the download [of Gayner's email correspondence with

10  ESC], [and] send [ESC] a thumb drive of the production so that [ESC] can review it for attorney-

11  client information before I deliver it to Sony's attorneys."  *Id*. at ECF p. 4.  MABR responded, "I

12  agree about the service and the download," and asked to speak to Ubhaus by phone the following

13  day at a designated time.  *Id*. at ECF p. 3.

14      MABR did not receive a call from Ubhaus at the proposed time but believed that Ubhaus

15  "was going to provide the documents for ESC's privilege review before producing the documents

16  to SIE" so that it was not necessary to move for a protective order.  Veverka Decl. ¶¶ 11, 12.

17      On May 19, 2022, Ubhaus sent both MABR and SIE the first volume of documents Gayner

18  produced in response to the subpoena, without first providing them to MABR for review.  This

19  consisted of approximately 605 documents (Volume I).  Veverka Decl. ¶¶ 13, 14, Ex. A.  On May

20  23, 2022, SIE's counsel notified MABR that they had halted review of Gayner's production when

21  they saw documents indicating that "Gayner may have had a financial relationship with ESC on

22  matters related to SIE and this lawsuit."  Veverka Decl. Ex. A at ECF p. 2.  SIE's counsel noted

23  that MABR had previously represented in meet and confer discussions "that Ms. Gayner was

24  solely ESC's attorney on matters that did not relate to SIE or this lawsuit, and that

25  communications or information exchanged between ESC and Ms. Gayner that concerned SIE or

26  the subject matter of this lawsuit are *not* privileged."  SIE asked MABR to confirm "that ESC is

27  not claiming privilege over its communications with Ms. Gayner relating to SIE or the subject

28  matter of this lawsuit."  *Id*. at ECF pp. 3-4 (emphasis in original).  MABR responded that they "do

United States District Court
Northern District of California

6

not recall having made" the statement that "Gayner served as 'ESC's attorney only for subject matter that did not relate to SIE and [ESC] would not assert privilege over questions and communications relating to SIE." *Id*. at ECF p. 3. MABR wrote, "we think we have consistently stated that ESC, as holder of the attorney-client privilege, would assert privilege where appropriate." *Id*. As previously discussed, MABR had never responded to SIE's counsel's May 12, 2022 letter memorializing SIE's understanding that Gayner had performed work as an attorney on ESC's behalf but only for subject matter not related to SIE.

On May 30, 2022, ESC served SIE with a privilege log for the Volume I documents. On June 1, 2022, Ubhaus provided MABR with a second volume of Gayner's documents consisting of approximately 320 documents (Volume II). Veverka Decl. ¶¶ 15-17. SIE deposed Gayner on June 1, 2022. *See* Gayner Dep.

In June 2022, the parties filed three discovery letters regarding SIE's challenge to ESC's assertion of the attorney-client privilege and work product doctrine over Gayner's documents. [Docket Nos. 229-231.] On July 1, 2022, the court issued an order requiring full briefing, including a discussion of which law of privilege applies to the dispute. [Docket No. 234.] The court also found that descriptions of certain withheld documents on ESC's privilege log were "too general to enable SIE or the court to evaluate ESC's claims of privilege and protection," and that "it appear[ed] that ESC may have over-designated materials as privileged and protected." It ordered ESC to re-review each withheld document to determine whether it was properly withheld, to revise its privilege log to remove any documents that are not protected from discovery, and to add details in the log for the remaining documents. The court set a schedule for production of the revised privileged log, as well as a briefing schedule. *Id*. The parties twice requested extensions of these deadlines which the court granted. [Docket Nos. 238, 242.]

ESC served an amended privilege log for the Volume I documents on July 7, 2022. Veverka Decl. ¶ 20. On July 12, 2022, ESC served a privilege log for the Volume II documents. It also produced approximately 200 documents that it had de-designated from Gayner's productions. *Id*. at ¶ 21; Khachatourian Decl. ¶ 3. On July 21, 2022, ESC served amended privilege logs for both volumes of documents. Veverka Decl. ¶ 24; Khachatourian Decl. ¶¶ 16,

17, Exs. 13 (Annotated Volume I Log), 14 (Annotated Volume II Log).

**B.      SIE's Motion to Compel**

SIE now moves to compel production of the documents responsive to the Gayner subpoena that ESC continues to withhold based on the attorney-client privilege and attorney work product doctrine.  There are approximately 725 documents in dispute.

After briefing was complete, the court ordered SIE to submit supplemental evidence, including the entire transcript of Gayner's deposition and testimony by any other witness(es) regarding Gayner's role with respect to "crafting and/or writing her July 2019 letter to SIE and her September 2020 declaration in opposition to SIE's motion to transfer."  [Docket No. 264.]  The court also ordered SIE to file a sworn declaration with evidence supporting the assertion in its reply that "Gayner only invoiced ESC for work done during five separate months, when ESC's log includes entries concerning SIE for approximately fifteen months," and set a deadline for ESC to respond to SIE's declaration.  *Id*. at 1-2.  The order expressly directed that "neither party may use this opportunity to submit further argument.  This order only permits the submission of additional facts."  *Id*. at 2.

SIE timely filed a declaration attaching Gayner's deposition and eleven invoices from Gayner to ESC, along with counsel's analysis of the time periods covered by the invoices and documents on ESC's privilege logs.  [Docket No. 267 (3d Khachatourian Decl. Nov. 25, 2022) ¶¶ 2-9, Exs. A & B (Gayner Dep.), C (Gayner's invoices).]  Counsel explained that SIE was "unable to submit additional declarations or deposition testimony at this time" because other than Gayner's deposition and production of documents, no discovery has taken place in this case.  3d Khachatourian Decl. ¶ 13.

ESC timely filed a declaration responding to the assertions in counsel's declaration.  [Docket No. 270 (Trinh Decl. Nov. 30, 2022).][2]

---

[2] SIE's declaration included statements that go beyond the scope of the court's order regarding supplemental evidence.  *See* 3d Khachatourian Decl. ¶¶ 10-12; Trinh Decl. ¶¶ 16-18 (discussing the same).  The court will disregard any statement or evidence not expressly authorized by its order.  SIE objected to statements in ESC's declaration about which privilege log entries correspond to work related to this case, to which ESC responded.  [Docket Nos. 271, 273.]  The court denies these objections as moot as it does not rely on any of the objected-to evidence in this

United States District Court
Northern District of California

## II.    LEGAL STANDARD

### A.  Attorney-Client Privilege

State law governs resolution of issues arising out of the invocation of the attorney-client privilege in this diversity action.  Fed. R. Evid. 501 ("in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision").  SIE contends, and ESC does not dispute, that California law applies here.  *See* Mot. 8; Khachatourian Decl. Ex. 15 at ECF p. 5.

Under California law, the attorney-client privilege is governed by statute and applies to confidential communications between client and lawyer during the course of the attorney-client relationship.  *See* Cal. Evid. Code § 952.  A "confidential communication" is:

> information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other that those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.

Cal. Evid. Code § 952.

"The attorney-client privilege attaches to a confidential communication between the attorney and the client and bars discovery of the communication irrespective of whether it includes unprivileged material."  *Costco Wholesale Corp. v. Superior Ct.*, 47 Cal. 4th 725, 734 (2009) (explaining that "[n]either the statutes articulating the attorney-client privilege nor the cases which have interpreted it make any differentiation between 'factual' and 'legal' information").  "The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship."  *Id*. at 733.  "Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the

order.

privilege does not for other reasons apply." *Costco*, 47 Cal. 4th at 733.

The party claiming a privilege bears the burden to show that the evidence it seeks to suppress falls within the terms of an applicable statute. *Great Am. Assurance Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084, 1090 (N.D. Cal. 2009); *HLC Props., Ltd. v. Superior Ct.*, 35 Cal. 4th 54, 59 (2005). Under California law, the scope of attorney-client privilege must be construed narrowly. *Anderson v. SeaWorld Parks & Ent., Inc.*, 329 F.R.D. 628, 632 (N.D. Cal. 2019) (citations omitted).

### B.    Work Product Doctrine

"Federal law governs disposition of issues about the work product doctrine." *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 163 F.R.D. 574, 577 (N.D. Cal. 1995). The work product doctrine protects from discovery "materials prepared by an attorney in anticipation of litigation," be they "by or for the attorney." *United States v. Bergonzi*, 216 F.R.D. 487, 494 (2003) (citations omitted); *accord United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011). It aims to balance the "promotion of an attorney's preparation in representing a client" and "society's general interest in revealing all true and material facts to the resolution of a dispute." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1375 (Fed. Cir. 2007) (citation and quotation marks omitted).

To qualify for work-product protection, materials must "(1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative." *Richey*, 632 F.3d at 567 (citation and quotation marks omitted). When a document was not prepared exclusively for litigation, it will receive protection if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Id*. at 568 (citation and quotation marks omitted). This analysis requires the court to examine the totality of the circumstances and determine whether the document was prepared in anticipation of litigation and "would not have been created in substantially similar form but for the prospect of litigation." *Id*. (citation and quotation marks omitted).

Unlike the attorney-client privilege, the work product doctrine may be overcome by a party's showing of "need and undue hardship." *In re Seagate*, 497 F.3d at 1375 (citing Fed. R.

United States District Court
Northern District of California

Civ. P. 26(b)(3)).  The degree of showing required, however, depends on whether the sought-after material "is factual, or the result of mental processes such as plans, strategies, tactics, and impressions, whether memorialized in writing or not."  *In re Seagate*, 497 F.3d at 1375 (citations omitted).  Factual materials simply require a demonstration of "substantial need and undue hardship," while materials reflecting mental processes receive greater, "nearly absolute" protection.  *Id*. (citations omitted).

## III.   DISCUSSION

SIE moves to compel ESC to produce four categories of documents:

1.   Communications and drafts regarding Gayner's July 2019 letter to SIE, over which ESC asserts attorney-client privilege and the work product doctrine (yellow highlights on logs);

2.   Communications and drafts regarding the Gayner declaration in support of ESC's opposition to the motion to transfer, over which ESC asserts attorney-client privilege and the work product doctrine (blue highlights on logs);

3.   Documents from September-October 2017 that ESC is withholding on the basis of the attorney-client privilege and work product doctrine, and so-called "standalone documents" that SIE argues do not appear to have been part of attorney-client communications (green highlights); and

4.   Log entries for which SIE contends ESC failed to provide sufficient details to assess the assertion of privilege despite having been given multiple opportunities to amend the same (orange highlights).[3]

### A.  ESC's Relevance Objection

As an initial matter, ESC opposes the motion because "SIE has not established that the documents it seeks are relevant."  Opp'n 4.  It disputes that Gayner has any knowledge relevant to the claims or defenses in this action.  *Id*.  ESC's argument lacks merit.  For starters, ESC waived

---

[3] SIE's annotated logs use pink highlighting to mark "[d]ocuments that ESC contends are irrelevant to the lawsuit but SIE reserves its rights to challenge at a later date."  Annotated Volume I Log, Annotated Volume II Log.  SIE is not moving to compel these documents at this time. Accordingly, the court does not address ESC's responsive argument.  *See* Opp'n 4-5.

this objection.  MABR's March 24, 2022 letter regarding the Gayner subpoena does not contain a relevance objection and ESC offers no evidence that it or Gayner objected on that basis.  *See* Khachatourian Decl. Ex. 8.  Accordingly, the court concludes that the objection has been waived.  *See, e.g., Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection.").  In any event, the documents are relevant.  ESC put Gayner's knowledge at issue by identifying her in its initial disclosures as a witness likely to have discoverable information about "ESC's development and creation of the PlayStation Pin Program; SIE accepting and asking ESC to proceed with the PlayStation Pin Program and Exclusive Vendor Agreement; breach of the Exclusive Vendor Agreement with ESC; and damages to ESC."  Initial Disclosures.

### B.   Category 1: Communications/Drafts Related to the July 2019 Letter

SIE moves to compel production of drafts of Gayner's July 2019 letter to SIE and communications related to the letter.  ESC asserts attorney-client privilege and the work product doctrine.

#### 1.   Attorney-Client Privilege

SIE argues that no privilege attaches to materials related to Gayner's July 2019 letter to SIE because the letter states that Gayner was writing as Erick's "friend" and she testified that she was "not acting in an attorney capacity" when she wrote it.

In response, ESC states that "ESC believe(d) [Shelly Gayner] was acting as a legal advisor" with respect to these materials (and all of the materials at issue in this motion).  Opp'n 2.  It submits a declaration by Erick in which he explains that he is ESC's founder, president, and principal.  He states that he first met Gayner in May 2009 when she was working for SIE, and that he remained in contact with her after she left SIE in 2014 and considers her "a personal friend."  [Docket No. 250 (Erick Decl. Aug. 4, 2022) ¶¶ 1, 5, 9.]  According to Erick, in 2017 he "engaged Ms. Gayner to provide legal advice and counsel to ESC in a variety of matters, including the drafting and preparation of general agreements involving ESC's intellectual property, as well as

the negotiation and finalization of contracts between ESC and third parties," and that "much of that work did not involve SIE." Erick Decl. ¶ 6. However, he states that "[a]s part of her engagement by ESC, Ms. Gayner did advise and assist ESC in connection with ESC's work and negotiations with [SIE]." *Id*. at ¶ 8. According to Erick, Gayner both collaborated with or worked under the direction of ESC's "outside 'general' counsel," Innes Smolansky, and "periodically provided direct legal counsel to ESC when Ms. Smolansky was otherwise unavailable." *Id*. at ¶¶ 4, 7. Erick further states that Gayner invoiced ESC "for the legal services she rendered" and ESC paid those invoices. *Id*. at ¶ 9. Erick states that "[f]rom [his] perspective (and necessarily that of ESC), from approximately August 2017 until the present, Ms. Gayner has been engaged as an outside attorney for ESC, providing . . . legal services and counsel," and that he has understood that his communications with Gayner and the work she performed for ESC "are subject to the protections the law affords to clients and their attorneys." *Id*. at ¶ 10. Based on this evidence, ESC argues that Gayner and Erick/ESC had an attorney-client relationship and that the attorney-client privilege shields communications related to Gayner's July 2019 letter.

The party asserting the attorney-client privilege "has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship." *Costco*, 47 Cal. 4th at 733. California Evidence Code section 951 defines a "client" for purposes of the privilege as "a person who, directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity . . ." A "'lawyer' means a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation." Cal. Evid. Code § 950. "An attorney-client relationship exists for purposes of the privilege whenever a person consults an attorney for the purpose of obtaining the attorney's legal service or advice," and "no formal agreement or compensation is necessary to create an attorney-client relationship for purposes of the privilege." *Kerner v. Superior Ct*., 206 Cal. App. 4th 84, 116-17 (2012). However, "no attorney-client relationship arises for purposes of the privilege if a person consults an attorney for nonlegal services or advice in the attorney's capacity as a friend rather than in his or her professional capacity as an attorney." *Id*. at 117. Additionally, "[t]he attorney-client

1   privilege only protects communications between attorney and client made for the purpose of

2   seeking or delivering the attorney's legal advice or representation." *L.A. Cnty. Bd. of Supervisors*

3   *v. Superior Ct.*, 2 Cal. 5th 282, 293 (2016).

4          ESC has failed to establish a prima facie claim of privilege as to the July 2019 letter.

5   Gayner testified that she and Erick wrote the letter "together" and that she helped him with the

6   letter "[a]s his friend."  When asked if she was "acting in an attorney capacity when [she was]

7   assisting Mr. Scarecrow with drafting the letter," Gayner responded unequivocally, "No."  Gayner

8   Dep. 52-53.  The sole evidence ESC offers in response is Erick's declaration in which he

9   acknowledges that he considers that Gayner is "a personal friend" but states that he "engaged [her]

10  to provide legal advice and counsel to ESC."  Erick Decl. ¶¶ 6, 9.  Tellingly, his declaration is

11  entirely silent about the July 2019 letter and whether he sought her legal advice in connection with

12  it.  Instead, he lists a "variety of matters" for which Gayner provided "legal advice and counsel,"

13  including "the drafting and preparation of general agreements involving ESC's intellectual

14  property, as well as the negotiation and finalization of contracts between ESC and third parties."

15  *Id*. at ¶ 6.  He adds that "Ms. Gayner did advise and assist ESC in connection with ESC's work

16  and negotiations with Sony," but offers no details about the nature of her advice and assistance

17  and does not state that he consulted her for *legal* advice related to Sony.  *Id*. at ¶ 8.  As noted, "no

18  attorney-client relationship arises for purposes of the privilege if a person consults an attorney for

19  nonlegal services or advice in the attorney's capacity *as a friend* rather than in his or her

20  professional capacity as an attorney."  *Kerner*, 206 Cal. App. 4th at 117 (emphasis added).  Erick's

21  generalized statements about his engagement of Gayner do not rebut Gayner's unequivocal

22  testimony that she acted as his friend when she helped him write the July 2019 letter and that

23  Erick knew this.

24          ESC does not address *Kerner*.  Instead, it cites cases holding that it is the client's belief

25  about the existence of an attorney-client relationship and the confidentiality of a communication

26  that controls the inquiry, not the attorney's characterizations of the same.  In other words, ESC

27  contends that its belief, not Gayner's, is what matters.  Opp'n 6-7 (citing *In re Regents of Univ. of*

28  *Cal.*, 101 F.3d 1386, 1390 (Fed. Cir. 1996) ("The professional relationship for purposes of the

United States District Court
Northern District of California

privilege for attorney-client communications hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice." (cleaned up)), and *Griffith v. Davis*, 161 F.R.D. 687, 695 (C.D. Cal. 1995) ("The decisive inquiry is whether the client reasonably understood the conference to be confidential." (cleaned up)).  These cases are inapposite as they do not discuss or apply California privilege law.  Even if they accurately reflect California law, they would not change the result here, because Erick's declaration is noticeably silent regarding his intent to seek confidential legal advice when drafting the July 2019 letter.

Although not explicit, ESC apparently takes the position that because Erick retained Gayner to provide legal advice for certain matters and Gayner "advise[d] and assist[ed] ESC in connection with ESC's work and negotiations with Sony," the attorney-client privilege attaches to all of Erick's communications with Gayner.  This position is unsupported and contradicts California law.  The California Supreme Court has explained that the attorney-client privilege "does not apply to every single communication transmitted confidentially between lawyer and client.  Rather, the heartland of the privilege protects those communications that bear some relationship to the attorney's provision of legal consultation." *L.A. Cnty. Bd. of Supervisors*, 2 Cal. 5th at 294-295 (discussing California Evidence Code § 952).  Thus, the privilege "is not applicable when the attorney acts merely as a negotiator for the client or is providing business advice; in that case, the relationship between the parties to the communication is not one of attorney-client." *Id*. at 296 (quoting *Costco*, 47 Cal. 4th at 735) (internal citations omitted).  Nor does it apply if a person consults an attorney for "advice in the attorney's capacity as a friend." *Kerner*, 206 Cal. App. 4th at 117.  While Erick's declaration states generally that he engaged Gayner "to provide legal advice and counsel to ESC in a variety of matters," he states only that "Gayner did advise and assist ESC in connection with ESC's work and negotiations with Sony" without connecting that work to Gayner's "provision of legal consultation." *See* Erick Decl. ¶¶ 6, 8.  These statements suggest Gayner may have been providing ESC with business advice related to ESC's dealings with Sony, as opposed to legal advice.  "The privilege does not apply to communications to an attorney who is transacting business that might have been transacted by

15

another agent who is not an attorney." *Montebello Rose Co. v. Agric. Lab. Rels. Bd.*, 119 Cal. App. 3d 1, 32 (1981).

Ultimately, "the inquiry turns on . . . the link between the content of the communication and the types of communication that the attorney-client privilege was designed to keep confidential," *L.A. Cnty. Bd. of Supervisors*, 2 Cal. 5th at 297, and ESC bears the burden of establishing that connection. *See Costco*, 47 Cal. 4th at 733. ESC has not demonstrated a link between Erick and Gayner's communications about the July 2019 letter and "the types of communication that the attorney-client privilege was designed to keep confidential," and has not adequately rebutted Gayner's testimony that she wrote the July 2019 letter as Erick's friend.

Accordingly, because ESC has not shown that communications and drafts related to the July 2019 letter were "for the purpose of legal consultation," *Id*. at 295, it has not "establish[ed] the preliminary facts necessary to support [exercise of the privilege], i.e., a communication made in the course of an attorney-client relationship." *Costco*, 47 Cal. 4th at 733.[4]

### 2.    Work Product Protection

ESC also claims that the work product doctrine shields materials related to Gayner's July 2019 letter to SIE. *See generally* Annotated Volume I Log, Annotated Volume II Log. To qualify for work product protection, materials must "(1) be prepared in anticipation of litigation or for trial

---

[4] SIE also points to evidence about Gayner's billing practices that it contends shows that she was frequently not acting in her capacity as an attorney with respect to Sony-related work for ESC. Specifically, Gayner testified that she charged Erick an hourly rate for "legal work" she did for him and stated, "[w]hen I didn't bill [Erick], it was because we were talking as friends." Gayner Dep. 57. SIE noted this testimony in its reply and argued that Gayner only invoiced ESC "for work done during five separate months," even though ESC's logs include SIE-related entries for 15 months, suggesting that much of Gayner's work reflected in log entries was not performed in her capacity as Erick's lawyer and that ESC over-designated materials as privileged. *See* Reply 2-3 (citing Gayner Dep. 57).

In a supplemental declaration, SIE's counsel states that "to the best of [her] knowledge," Gayner invoiced ESC for work related to this case that she performed in eight separate months, while ESC's privilege logs for Gayner's withheld documents contain entries covering 19 separate months. 3d Khachatourian Decl. ¶¶ 5, 7. SIE also submitted Gayner's invoices to ESC. *Id*. at Ex. C. In response, ESC's counsel provides her own analysis of the dates of invoices and entries on the privilege logs and contends that the privilege logs reflect only 17 months of SIE-related work. Trinh Decl. ¶¶ 6-15. Importantly, ESC does not rebut the basic premise of SIE's argument, which is that Gayner did not bill Erick for every interaction even though ESC claims attorney-client privilege shields all of their communications. The court's main takeaway from the evidence about the dates of invoices and privilege log entries is that it corroborates Gayner's testimony that she was not always acting as Erick/ESC's attorney when she did work for them.

and (2) be prepared by or for another party or by or for that other party's representative." *Richey*, 632 F.3d at 567 (citation and quotation marks omitted). ESC does not expressly address the work product doctrine with respect to this category of materials, *see* Opp'n 6-7, and did not submit any evidence to support that materials related to the July 2019 letter to SIE were "prepared in anticipation of litigation or for trial." As the proponent of the work product doctrine, ESC bears the burden of demonstrating that the protection applies. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). ESC has not satisfied that burden.

**C.     Category 2: Communications/Drafts Related to the Gayner Declaration**

The second category of materials involves drafts of Gayner's September 1, 2020 declaration and communications related to it. ESC asserts the attorney-client privilege and the work product doctrine over these materials.

**1.   Attorney-Client Privilege**

SIE argues that these materials are not protected by the attorney-client privilege because Gayner testified that MABR was not her attorney for purposes of preparing her declaration, *see* Gayner Dep. 43, and because Gayner submitted the declaration in her capacity "as a non-party and friend," and not as ESC's attorney. *See* Mot. 9; Gayner Dep. 124 (answering "yes" to the question, "when you agreed to submit a declaration on behalf of ESC, were you doing that as a friend?"). ESC responds that the privilege applies because ESC "believes that Gayner was acting as counsel for ESC at all relevant times" and "Gayner prepared the declaration at the direction of ESC." Opp'n 5. The court need not reach the merits of ESC's claim of privilege because ESC affirmatively disavowed its application to these materials.

At Gayner's deposition, SIE questioned her at length about her declaration. *See* Gayner Dep. 116-61. Gayner testified that ESC's attorneys at MABR (Tyson Hottinger and/or David Wright), drafted the declaration, that she made changes to the initial draft, and that the declaration went through two to three drafts before she signed it. *Id*. at 117-20. She also testified that she exchanged emails with MABR's attorneys and had at least one phone call with them regarding the declaration. *Id*. at 120-21. When SIE counsel Karineh Khachatourian asked Gayner what the MABR attorneys told her on the call, ESC attorney Christina Trinh asserted the work product

doctrine. Gayner Dep. 121. The following exchange then occurred between Khachatourian and

Frank Ubhaus, who is Gayner's attorney:

> Ms. Khachatourian: Mr. Ubhaus, are you instructing Ms. Gayner not
> to answer?
>
> Mr. Ubhaus: Let me hear the question again.
>
> By Ms. Khachatourian:
>
>> Q      What did either Tyson or David tell you on this phone
>>        call about the draft of [the declaration]?
>
> Mr. Ubhaus: The objection is attorney-client?
>
> Ms. Khachatourian: I'm afraid so, although I think there's absolutely
> no basis.
>
> Ms. Trinh: *It was not attorney-client*. It was work product privilege.
>
> Mr. Ubhaus: I'm not exactly sure how to respond to that. That - - the
> claim is that it's the work product of [MABR]?
>
> Ms. Trinh: The claim is that it would be instructions in furtherance of
> litigation for the declaration that was submitted in this litigation.

*Id*. at 121-22 (emphasis added). Ubhaus then stated, "I understand that - - I hear the objection.

I'm not going to instruct Ms. Gayner not to answer." *Id*. at 122. Gayner then proceeded to answer

questions about the substance of her communications with MABR's attorneys about the

declaration. *See id*. at 122-61.[5]

 "[U]nder California law the [attorney-client] privilege is waived if 'any holder of the

privilege, without coercion, has disclosed a significant part of the communication or has consented

to such disclosure made by anyone. Consent to disclosure is manifested by any statement or other

conduct of the holder of the privilege indicating consent to the disclosure, including failure to

claim the privilege in any proceeding in which the holder has the legal standing and opportunity.'"

*Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 667-68 (9th Cir. 2003) (quoting Cal. Evid. Code §

912); *see also Kerner*, 206 Cal. App. 4th at 112 ("[f]ailure to claim the privilege constitutes

---

[5] Gayner testified that she did not remember many of the details about her communications with MABR about the declaration, but that they would be captured in the documents and emails she turned over to her counsel in response to the subpoena. *See, e.g.*, Gayner Dep. 122-24, 140, 142, 143.

1     consent to disclosure and a waiver of the privilege only if the holder, in a proceeding in which he

2     or she has the legal standing and opportunity to claim the privilege, fails to claim the privilege

3     knowing that the disclosure of privileged information is sought.").  These conditions are satisfied

4     here because ESC's counsel not only failed to assert the attorney-client privilege at Gayner's

5     deposition but actually disavowed the privilege as to the communications in question.  *See*

6     *Feldman*, 322 F.3d at 668 (party that explicitly disclaimed privilege at deposition waived it under

7     Cal. Evid. Code § 912).  Accordingly, the attorney-client privilege does not shield the materials in

8     question.

9                              **2.      Work Product Protection**

10          ESC next contends that drafts of Gayner's declaration are shielded by the work product

11    doctrine because the declaration was prepared in connection with litigation.  Opp'n 6; *see, e.g.,*

12    *Tierno v. Rite Aid Corp.*, No. C 05-02520 TEH, 2008 WL 2705089, at *4 (N.D. Cal. July 8, 2008)

13    ("A declaration drafted by an attorney is 'clearly work product right up until the moment it [is]

14    filed,' and could easily reveal the same thought processes as a summary or memorandum of a

15    statement." (quoting *Intel Corp. v. VIA Techs., Inc.*, 204 F.R.D. 450, 452 (N.D. Cal. 2001))); *SEC*

16    *v. Schroeder*, No. C07-03798 JW HRL, 2009 WL 1125579, at *7 (N.D. Cal. Apr. 27, 2009)

17    (declining to order production of "internal notes and drafts" of memoranda; noting that "[m]ost

18    courts have held . . . that simply because a final product is disclosed to the public (or a third

19    person), an underlying privilege attaching to drafts of the final product is not destroyed."),

20    *objections overruled*, No. C 07-03798 JW, 2009 WL 1635202 (N.D. Cal. June 10, 2009).

21          SIE responds that "the draft declarations cannot be [attorney work product] since Gayner

22    submitted her declaration as a non-party—making ESC's citations to case law regarding drafts of

23    *attorney* declarations inapposite."  Reply 3.  SIE offers no authority to support its position that

24    draft declarations by a non-party cannot be attorney work product.  In any event, Gayner testified

25    that ESC's attorneys drafted her declaration.  *See* Gayner Dep. 117, 123.  Courts have generally

26    held that draft declarations prepared by counsel in connection with litigation constitute work

27    product and are protected from disclosure.  *See Schoenmann v. FDIC*, 7 F. Supp. 3d 1009, 1014

28    (N.D. Cal. 2014) (collecting cases).  SIE does not explain why the court should depart from this

United States District Court
Northern District of California

1   precedent.

2       The work product doctrine is a qualified protection; it may be overcome if the party

3   seeking disclosure of protected materials "shows that it has substantial need for the materials to

4   prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other

5   means." Fed. R. Civ. P. 26(b)(3)(A)(ii).  SIE offers no argument to overcome the work product

6   doctrine as to drafts of Gayner's declaration.  Accordingly, the court finds that the drafts of

7   Gayner's declaration are protected by the work product doctrine.

8       SIE further argues that ESC waived any protection through its "actions and inactions" with

9   respect to the production of Gayner's documents.  *See* Mot. 13-14.  Specifically, SIE argues that

10  ESC effected an implicit waiver by letting Gayner produce all of her materials directly to SIE

11  without first seeking review, and by failing to seek a protective order regarding the subpoena to

12  Gayner.  Mot. 13.

13      Pursuant to Federal Rule of Evidence 502(b), a disclosure made in a federal proceeding

14  "does not operate as a waiver in a federal or state proceeding if" three elements are satisfied:

15          (**1**) the disclosure is inadvertent;

16          (**2**) the holder of the privilege or protection took reasonable steps to
            prevent disclosure; and

17

18          (**3**) the holder promptly took reasonable steps to rectify the error,
            including (if applicable) following Federal Rule of Civil Procedure
            26(b)(5)(B).

19

20  Fed. R. Evid. 502(b).  Although neither party addresses Rule 502(b), ESC essentially argues that

21  the disclosure to SIE was inadvertent because it mistakenly but reasonably believed that Ubhaus

22  was going to provide the materials for ESC's review before producing them to SIE.  Opp'n 12.

23      On the current record, the court finds that the requirements of Rule 502(b) are satisfied.

24  ESC submits unrebutted evidence that Ubhaus offered to provide Gayner's production to MABR

25  so that it could perform a privilege review prior to production to SIE, and that MABR accepted

26  this offer.  Khachatourian Decl. Ex. 10 at ECF p. 3-4.  ESC's counsel states that he made

27  unsuccessful efforts to reach Ubhaus and "believed that Mr. Ubhaus was going to provide the

28  documents for ESC's privilege review before producing the documents to SIE" and accordingly

United States District Court
Northern District of California

believed that there was no need for a protective order.  Veverka Decl. ¶¶ 11, 12.  MABR received the first volume of documents on May 19, 2022, and learned on May 23, 2022 that privileged materials had been produced to SIE.  *Id*. at ¶¶ 13, 14.  The same day, MABR asked SIE to allow Gayner to withdraw the privileged materials.  *Id*. at ¶ 14.  On reply, SIE asserts that on May 16, 2022, Ubhaus informed both ESC and SIE that he was having thumb drives with Gayner's production sent to "the attorneys involved in the litigation."  [Docket No. 252 (2d Khachatourian Decl., Aug. 8, 2022) ¶ 2, Ex. A.]  SIE argues that ESC did not object and therefore knew that SIE would receive the production at the same time as ESC.  Reply 5-6.  To the extent that Ubhaus's email put MABR on notice that he was producing Gayner's materials without first allowing MABR to perform a privilege review, MABR took steps to rectify the error on May 23, 2022, which is seven days after Ubhaus's email and four days after the production of Gayner's documents.  The court finds that the circumstances of the production of Gayner's materials did not result in a waiver of privilege.

### D.    Privilege Log Entries 00069939 and 00069940

SIE challenges ESC's invocation of the work product doctrine and attorney-client privilege with respect to two documents created in September and October 2017.  Mot. 10.  The first document, 00069939, is described as "ESC Meeting Notes."  Gayner is listed as the author and recipient; the log description is "Attorney notes outlining negotiation strategy for Sony pin program terms."  The second, 00069940, is described as "ESC Questions" and both Gayner and Erick are listed as the authors and recipients.  The log description is "Attorney notes regarding investigation relating to potential dispute with Sony."  Annotated Volume II Log at 5.  ESC later clarified that Gayner was the only author/recipient of the document listed on the second entry.  Khachatourian Decl. ¶ 19, Ex. 16 at ECF p. 2 ("Erick Scarecrow was erroneously identified as 'Author' and 'Recipient or Modified By' under DOCID No. 00069940").

To qualify for work-product protection, materials must "(1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative."  *Richey*, 632 F.3d at 567 (citation and quotation marks omitted).  When a document was not prepared exclusively for litigation, it will receive protection if "in light of the

1    nature of the document and the factual situation in the particular case, the document can be fairly

2    said to have been prepared or obtained because of the prospect of litigation." *Richey*, 632 F.3d at

3    568 (citation and quotation marks omitted).  This analysis requires the court to examine the

4    totality of the circumstances and determine whether the document was prepared in anticipation of

5    litigation and "would not have been created in substantially similar form but for the prospect of

6    litigation." *Id.* (citation and quotation marks omitted).

7         SIE argues that the dates the documents were created (September and October 2017)

8    establish that they cannot be attorney work product because ESC did not anticipate litigation at

9    that time.  The complaint alleges that SIE informed ESC in April 2018 "that SIE would not be

10   using ESC for the PlayStation Pin Program" in violation of the EVA.  *See* Compl. ¶ 81.  SIE notes

11   that this was well after the materials were created in Fall 2017.  ESC does not expressly address

12   this argument.  It simply contends that Gayner's "mental impressions regarding the pending

13   dispute are protected."  ESC does not submit evidentiary support for its assertion that there was a

14   pending dispute or at least "the prospect of litigation" at the time the materials were created.

15   Opp'n 8.  This is insufficient.  As the proponent of the work product doctrine, ESC bears the

16   burden of demonstrating that the protection applies.  *See In re Grand Jury Investigation*, 974 F.2d

17   at 1071.  The court finds that it has failed to do so.

18        SIE also challenges the assertion of attorney-client privilege because Gayner was the only

19   author or recipient of the documents.  Mot. 10.  Accordingly, it argues, the documents "were not

20   attorney-client communications."  *Id.*  ESC addresses the attorney-client privilege only as to

21   00069940, thereby conceding the point as to 00069939.  *See* Opp'n 7-8.  With respect to

22   00069940, ESC argues that "the privilege covers attorney notes that memorialize attorney-client

23   communications, such as DOCID 00069940."  *Id.*  The privilege log describes 00069940 as

24   "Attorney notes regarding investigation relating to potential dispute with Sony."  The log does not

25   state that the document contains notes memorializing attorney-client communications, and ESC

26   offers no evidence supporting that claim.  As discussed above, the privilege applies only to "a

27   communication made in the course of an attorney-client relationship," *Costco*, 47 Cal. 4th at 733,

28   and "only protects communications between attorney and client made for the purpose of seeking

United States District Court
Northern District of California

1    or delivering the attorney's legal advice or representation." *L.A. Cnty. Bd. of Supervisors*, 2 Cal.

2    5th at 293.  ESC has failed to show that the attorney-client privilege applies to 00069939 or

3    00069940.

4        **E.    Materials For Which SIE Contends ESC Provided Insufficient Details to**
            **Enable Evaluation of the Claimed Privilege**

5

6        Finally, SIE argues that ESC has failed to provide sufficient details to enable SIE to assess

7    the assertion of privilege for a substantial number of log entries.  Mot. 14.  For example, it

8    contends that many entries lack sufficient facts to establish that Erick or ESC was consulting an

9    attorney for the purpose of obtaining legal advice or services.  *Id*.  SIE asserts that these still-

10   deficient privilege log entries after numerous amendments should result in waiver pursuant to

11   *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (failure to

     timely produce a privilege log may result in waiver of asserted privileges).[6]

12

13       The court has reviewed ESC's privilege logs.  The entries indicate the general nature and

14   subject matter of the communications.  SIE does not highlight any individual entries that it

15   contends are problematic, other than citing the first page of the Volume I log and complaining that

16   the entries on that page indicate that a particular communication "was about 'discussion[s]'

17   without indicating that ESC was receiving or seeking legal advice."  Mot. 14-15.  But the entries

18   on the cited page state "Discussion of advice" regarding various subjects.  While there is certainly

19   room for improvement, ESC's logs provide information sufficient to enable SIE to assess the

20   claims of privilege and protection such that a finding of waiver is not warranted.  *See* Fed. R. Civ.

21

22   [6] The undersigned's April 21, 2022 Notice of Reference and Order re: Discovery Procedures sets
     forth six categories of information that should be included in privilege logs:

23
                  Unless the parties agree to alternative logging methods, the log should
24                include: (a) the title and description of the document, including
                  number of pages or Bates-number range; (b) the subject matter
25                addressed in the document; (c) the identity and position of its
                  author(s); (d) the identity and position of all addressees and recipients;
26                (e) the date the document was prepared and, if different, the date(s)
                  on which it was sent to or shared with persons other than its author(s);
27                and (f) the specific basis for the claim that the document is privileged
                  or protected.

28   [*See* Docket No. 210 (Notice of Reference and Order re: Discovery Procedures) at 5.]

                                          23

1  P. 26(b)(5) ("[w]hen a party withholds information otherwise discoverable by claiming that the

2  information is privileged . . . the party must . . . describe the nature of the documents,

3  communications, or tangible things not produced or disclosed—and do so in a manner that,

4  without revealing information itself privileged or protected, will enable other parties to assess the

5  claim."). Going forward, however, in light of the lessons learned from adjudication of this

6  motion, the court expects both parties to provide robust and comprehensive privilege logs.

7  **IV.  CONCLUSION**

8  For the foregoing reasons, SIE's motion to compel is granted in part and denied in part, as

9  follows:

10  ESC has failed to demonstrate that drafts of the July 2019 letter and communications

11  related to the letter are protected by the attorney-client privilege or the work product doctrine.

12  Accordingly, it must produce the documents highlighted in yellow on the annotated logs within

13  seven days of the date of this order;

14  ESC waived the attorney-client privilege as to communications about Gayner's declaration

15  but has established that the work product doctrine applies to drafts of the declaration.

16  Accordingly, it must produce communications highlighted in blue on the annotated logs, except

17  for drafts of the declaration, within seven days of the date of this order; and

18  ESC has failed to demonstrate that the attorney-client privilege or the work product

19  doctrine apply to the documents at privilege log entries 00069939 and 00069940 and must

20  produce them within seven days of the date of this order.

21  SIE's motion is otherwise denied.

22

23  **IT IS SO ORDERED.**

24  Dated: January 30, 2023

25



Donna M. Ryu
United States Magistrate Judge

26

27

28