1

2                          UNITED STATES DISTRICT COURT

3                        NORTHERN DISTRICT OF CALIFORNIA

4

5    ESC-TOY LTD.,                          Case No.  21-cv-00778-EMC

6                    Plaintiffs,
                                            **ORDER TO DISQUALIFY COUNSEL**
7         v.                                **MASCHOFF BRENNAN**

8    SONY INTERACTIVE
     ENTERTAINMENT LLC,                     Docket No. 316
9
                    Defendants.
10

11                          I.      **INTRODUCTION**

12        Defendant Sony Interactive Entertainment, LLC ("SIE") moves to disqualify Plaintiff

13   ESC-Toy Ltd.'s ("ESC") counsel, Maschoff Brennan ("MABR"), for improperly obtaining SIE's

14   confidential information from SIE's former counsel, Shelly Gayner.  For the reasons provided

15   below, MABR is disqualified.

16        The motion is GRANTED.

17                          II.     **BACKGROUND**

18        This motion arose out of MABR's improper communications with SIE's former counsel,

19   Shelly Gayner.  Mot. to Disqualify, 1.  SIE argues that Ms. Gayner improperly worked with SIE's

20   adversaries in this action, ESC and MABR, providing them with SIE's privileged information.  *Id.*

21   at 18.  MABR claims that they should not be disqualified because Ms. Gayner did not disclose

22   SIE's confidential information to MABR and she was never litigation counsel in this action.

23   Opp'n, 15, 18.

24        Further, SIE argues that MABR has continuously changed its position on their relationship

25   with Ms. Gayner, which violates the firm's duty of candor to the Court and to the parties.  Mot. to

26   Disqualify, 24.  MABR categorically denies these accusations.  Opp'n, 22.

27        Finally, MABR contends that the motion to disqualify fails because SIE waived their claim

28   by failing to file earlier, SIE's claim is barred by judicial estoppel, and SIE lacks standing.  *Id.* at

1    14, 20, 23.  SIE denies these contentions.

2       A.  The Underlying Dispute

3          In the underlying action, ESC sued SIE for breach of contract and related claims.  ESC,

4    founded by Erick Scarecrow aka Erick Chatel, designs, creates, and manufactures collectible

5    merchandise in the gaming and entertainment industries.  Compl. ¶ 10.  SIE, a subsidiary of Sony

6    Corporation of America, "is responsible for the PlayStation brand and services associated with the

7    video game and digital entertainment industry."  *Id*. at ¶ 2.

8          Two contracts between the parties are relevant to ESC's claims: a written 2014

9    Merchandise License Agreement ("MLA") and a purported oral 2017 Exclusive Vendor

10   Agreement ("EVA").  The MLA gave ESC a license to design, manufacture, and sell merchandise

11   associated with numerous PlayStation videogames.  Compl. ¶¶ 42-45.  According to ESC, in 2017

12   the parties entered into the EVA, an oral contract establishing that ESC would be the exclusive

13   vendor providing collectible pins to SIE.  *Id*. at ¶¶ 67-74.   ESC alleges that SIE breached the

14   exclusivity provision of the EVA.   *Id*. at ¶ 105.   SIE disputes the existence and/or enforceability

15   of the EVA.  *See generally* Def.'s Mot. to Dismiss, Docket No. 27.

16      B.  Ms. Gayner's Representation of both SIE and ESC

17         Ms. Gayner's involvement with SIE and subsequently ESC is central to this motion.  Ms.

18   Gayner is a licensed California attorney who worked for SIE for approximately sixteen years.  Docket

19   No. 74, ¶ 1.  From 1998 to 2007, Ms. Gayer worked as in-house counsel for SIE, as the Director of

20   Legal and Business Affairs.  *Id*.  In this role, she acted as lead counsel reviewing and drafting all

21   transactional agreements including content licenses, merchandise, software, end-user licenses,

22   development, prototypes, etc.  Gayner Dep. 69:16-19.  On January 5, 1998, Ms. Gayner signed a non-

23   disclosure agreement ("NDA"), which stated that she was not permitted "at any time, either during or

24   subsequent to [her] employment, [to] disclose to any other person or company any information,

25   knowledge or data [she] receive[d] or develop[ed] during [her] employment which is considered

26   proprietary to [Sony Computer Entertainment America, Inc.] …"  Khachatourian Decl. Ex. 27, p. 8,

27   Docket No. 317.

28         In 2007, Ms. Gayner moved to SIE's business development department, where she was the

United States District Court
Northern District of California

2

Director of Licensing from 2007 to 2014. Gayner Decl. ¶ 1, Docket No. 76. Ms. Gayner "establish[ed] the merchandise licensing program" as the Director of Licensing and negotiated the merchants licensing agreements in that role. *Id.*; Gayner Dep. 72:6-9. At Ms. Gayner's deposition, she testified that she only handled the business side, negotiating the business terms of the licensing agreements. *Id.* at 72:11-14. Though she did not negotiate the legal terms in that role, she interacted with SIE's legal department, "[p]robably almost every day." *Id.* at 72:11-13, 73:7-10, 96:6-12. At her deposition, SIE's counsel noted that on Ms. Gayner's LinkedIn profile, it says that she was recruited from the legal department to join the licensing department in 2007. SIE's counsel asked Ms. Gayner "so does that mean that at one point you no longer were part of the legal department?" Ms. Gayner replied, "I was in both, so I never left the legal department." Gayner Dep. 85:21-86:11.

In 2014, ESC and SIE entered into a Merchants Licensing Agreement ("MLA"). Compl. ¶ 42. On behalf of SIE, Ms. Gayner negotiated ESC's MLA and ultimately signed it, binding SIE to its terms. Ms. Gayner left SIE in 2014 to join GNS Games. Gayner Dep. 18:14. Mr. Scarecrow, the founder of ESC, and Ms. Gayner first met in May 2009 when she was working for SIE. They remained in contact after Ms. Gayner left SIE in 2014. Mr. Scarecrow testified that he considers her "a personal friend." Erick Decl. ¶¶ 1, 5, 9, Docket No. 240.

In 2017, Ms. Gayner started invoicing ESC for her legal services. While her capacity is not explicitly stated, it is evident from ESC's privilege log that Ms. Gayner was helping ESC specifically regarding ESC's legal relationship with SIE. Khachatourian Decl., 2:3-9, Docket No. 267. In 2017, Ms. Gayner met with ESC and created a documented described as "Attorney notes outlining negotiation strategy for Sony pin program terms." Annotated Volume II Log at 5. Subsequently, Ms. Gayner met with ESC and created a document described as, "Attorney notes regarding investigation relating to potential dispute with Sony." *Id.* These documents were identified in ESC's privilege log in the present litigation.

In July 2019, Ms. Gayner sent a letter on ESC's behalf to SIE Senior Corporate Counsel Dan Herp to provide her input in the ESC-SIE dispute, on ESC's behalf. Khachatourian Decl. Attach. B, Docket No. 245. Ms. Gayner wrote to Mr. Herp about her "understanding that there is a

current dispute between ESC Toy . . . and SIE."  She communicated that "[b]ecause Erick and I are personal friends and because I helped establish the relationship between ESC and SIE, I wanted to send you a note . . . and provide input, from my personal perspective, on the quality of ESC as a licensee, their products, and Erick as an individual."  Ms. Gayner provided a history of the dealings between ESC and SIE and wrote, "I'm helping Erick communicate and tell his side of the story to you . . . [a]s you know, I'm not a litigator."  She closed the letter by offering her assistance in "facilitating" a resolution of the parties' dispute and helping to schedule a meeting with Mr. Scarecrow.  July 17, 2019 Letter.  Ms. Gayner later testified at her 2022 deposition that she and Mr. Scarecrow "wrote [the July 2019 letter] together" and that in so doing she was "not acting in an attorney capacity"; rather, she helped him with the letter "[a]s his friend."  Gayner Dep. 52:15-53:2.  Yet, on May 21, 2019, Ms. Gayner invoiced ESC for her work writing this letter. Khachatourian Decl. Ex. C, Docket No. 265 (invoicing for "review email & revisions to SEI (sic) letter from Erick and respond.").

Ms. Gayner testified that following the July 2019 letter, at Mr. Scarecrow's request, she participated in a call that included Mr. Scarecrow, ESC's attorney Innes Smolansky, and SIE's Senior Corporate Counsel Dan Herp, and that Mr. Herp told her that she "wasn't welcome to be on the call because [she] wasn't an attorney representing" Mr. Scarecrow.  *Id*. at 99:15-17. According to Ms. Gayner, Mr. Scarecrow knew that Ms. Gayner was "attending the call as his friend and not as his attorney."  *Id*. at 101:4-7.

This case was initially filed in 2020 in the United States District Court for the District of Nevada.  *See* Compl.  SIE moved to transfer the case to the Northern District of California based on a forum selection clause in the MLA.  In opposition to SIE's 2020 motion to transfer, ESC disputed the applicability of the forum selection clause in the MLA arguing that the EVA is separate from the MLA, and that the EVA, not the MLA, governs this dispute.

In opposing the motion to transfer, ESC submitted a declaration by Ms. Gayner  (the "2020 Gayner Declaration").  Gayner Decl., Docket No. 76.  In the declaration, Ms. Gayner asserts that she was involved in the negotiation of the 2014 MLA at issue and that based on her experience  as Sony's Director of Licensing, she "understand[s] ███████████████████████████

███████████████████. *Id*. at ¶ 7, 9.  In the declaration, Ms. Gayner stated in relevant part:



Gayner Decl. 3-4.

SIE moved to strike the 2020 Gayner Declaration, arguing that Ms. Gayner's declaration was "replete with information that SIE considers confidential and that should not have been disclosed and used in this litigation outside the formal discovery process, if at all."  Mot. to Strike, 4.  SIE also challenged ESC's conduct in "obtain[ing] information from private consultation with a former employee and legal counsel outside the normal discovery procedures" without any "apparent safeguards."  *Id*.

ESC opposed the motion to strike the declaration, disputing that it contained confidential information and arguing that its contact with Ms. Gayner was "entirely proper."  Opp'n, 1-2, Docket No. 105.  ESC contended that "Gayner was not [an] SIE employee when ESC filed this action and thus has no knowledge of any privileged communications regarding SIE's preparation for and defense of this action."  *Id*. at 8.  Accordingly, it argued, "ESC's contact with Gayner does not put ESC's counsel in a position to disclose or use SIE's privileged information to assist ESC.  In other words, *Gayner has no knowledge of this action* . . ."  *Id*. at 9 (emphasis added).  "Gayner is not attempting to represent ESC in this action and is thus not accepting representation adverse to SIE."  *Id*. at 10.

In January 2021, the Nevada district court granted the motion to transfer and transferred the case to the Northern District of California, and the case was eventually assigned to the Honorable Edward M. Chen.  Docket Nos. 115, 116, 121.  At the initial case management conference in May 2021, Judge Chen denied as moot the motion to strike the 2020 Gayner Declaration.  *See* Docket No. 128.

Nonetheless, the circumstances of the 2020 Gayner Declaration are still in dispute.  At Ms. Gayner's subsequent deposition, SIE questioned her at length about her declaration.  *See* Gayner Dep.

United States District Court
Northern District of California

1    116-61. Ms. Gayner testified that ESC's attorneys at MABR (Tyson Hottinger and/or David Wright)

2    drafted the declaration, that she made changes to the initial draft, and that the declaration went through

3    two to three drafts before she signed it. *Id*. at 117-20. She also testified that she exchanged emails

4    with MABR's attorneys and had at least one phone call with them regarding the declaration. *Id*. at

5    120-21. Ms. Gayner testified that she did not remember many of the details about her communications

6    with MABR about the declaration, but that they would be captured in the documents and emails she

7    turned over to her counsel in response to the subpoena. *See, e.g.*, Gayner Dep. 122-24, 140, 142-43.

8    However, those documents and emails were subsequently classified as privileged, and SIE could not

9    access them.

10       There is evidence to suggest that MABR was aware their relationship with Ms. Gayner may be

11    a problem. On September 16, 2020, Ms. Gayner emailed her SIE NDA to MABR attorneys, Tyson

12    Hottinger and David R. Wright. Khachatourian Decl. Ex. 27, p. 3, Docket No. 317.

13       On June 3, 2021, ESC served Federal Rule of Civil Procedure 26(a) initial disclosures in

14    which ESC identified Ms. Gayner as a witness likely to have information relevant to the case:

15    Shelly Gayner is believed to have discoverable information about: ███████████

16    ████████████████████████████████

17    Khachatourian Decl. Ex. 17 ¶ 20, Docket No. 245. This disclosure directly contradicted ESC's

18    prior representation that "Gayner has no knowledge of this action," made in ESC's opposition to

19    SIE's motion to strike the 2020 Gayner Declaration. *See* Docket No. 105 at 9.

20       Following the parties' unsuccessful attempts at an early settlement, discovery began in

21    early 2022. SIE served discovery regarding Ms. Gayner's involvement in this dispute.

22    Khachatourian Decl. Exs. 6, 7, Docket No. 245. In response to an interrogatory asking ESC to

23    "identify each person employed by ESC or retained by ESC as counsel" who communicated with

24    any third party about ESC's dispute with SIE and/or this action, ESC identified "Innes Smolansky,

25    Shelly Gayner, and counsel of record in this action as counsel for ESC." Khachatourian Decl. Ex.

26    6, Docket No. 245. This again contradicted ESC's prior representation that "Gayner has no

27    knowledge of this action." ESC offers no explanation for these contradictions.

28       ESC asserted the attorney-client privilege in objecting to a Rule 30(b)(6) topic on "ESC's

United States District Court
Northern District of California

relationship and Communication(s) with Shelly Gayner from January 1, 2017 to the present," but

stated its willingness "to produce a designee to testify on its behalf with respect to non-privileged

matters concerning ESC's relationship with Shelly Gayner." Khachatourian Decl. Ex. 7, Docket

No. 245.   The parties met and conferred about this deposition topic.   Woloszczuk Decl. ¶ 2,

Docket No. 246.  Subsequently, the parties met and conferred regarding the deposition topic of Ms.

Gayner.  Afterwards, SIE's counsel wrote to MABR:

> During a meet and confer on May 2nd, ESC represented that Ms. Gayner was solely ESC's
> attorney on matters that did not relate to SIE or this lawsuit, and that communications or
> information exchanged between ESC and Ms. Gayner that concerned SIE … are *not*
> privileged.  SIE memorialized this representation in a May 12 letter, and ESC has now, two
> weeks later, not disputed SIE's characterization of ESC's position.

Veverka Decl. Ex. A, Docket No. 249.  MABR responded saying "we do not recall having made

that broad of a statement … we think we have consistently stated that ESC, as holder of the

attorney-client privilege, would assert privilege where appropriate." *Id.*

SIE served a subpoena on Ms. Gayner in March 2022.   Khachatourian Decl. Ex. 3, Docket

No. 245.   The subpoena requested Ms. Gayner's appearance for a deposition and included 26

requests for production (RFPs).   The RFPs included requests for communications between Ms.

Gayner and any person including ESC about this action and the dispute underlying the action;

contracts and drafts of contracts between Ms. Gayner and ESC; and drafts of and communications

about the 2019 Gayner Letter that Ms. Gayner wrote to SIE on Mr. Scarecrow's behalf.   *Id.*   On

March 24, 2022, MABR sent SIE objections to the subpoena "on behalf of" both ESC and Ms.

Gayner, which included that "many of the document categories call for documents or information

protected from disclosure by the attorney-client privilege or attorney work product doctrine." *Id.*

at Ex. 8.

The following day, SIE's counsel asked MABR to "please kindly confirm whether your

firm represents Shelly Gayner as we need to know whether we can communicate with her

directly.   MABR responded, "our firm does not act as engaged legal counsel for Ms. Gayner."

*Id.* at Ex. 9.

At ESC's expense, Ms. Gayner retained Frank Ubhaus of Berliner Cohen LLP in

connection with SIE's subpoena to her.   Veverka Decl., Aug. 4, 2022 ¶ 9, Docket No. 249;

Khachatourian Decl. Ex. 10, Docket No. 245.  Mr. Ubhaus communicated with MABR in April 2022 and asked about the existence of an attorney-client relationship between Ms. Gayner and ESC:

> One issue I need you to address is whether an attorney-client relationship existed between ESC/Erik [sic] and Shelly and, if so, whether Erik [sic] wants to assert the privilege . . . [d]o you want to review [Gayner's] documents before we produce them and do you want to assert attorney-client privilege to any documents Shelly might produce or any testimony she might give?

Khachatourian Decl. Ex. 10.   MABR's response on behalf of ESC is not in the record, but Mr. Ubhaus later suggested that "we do the download [of Gayner's email correspondence with ESC], [and] send [ESC] a thumb drive of the production so that [ESC] can review it for attorney-client information before I deliver it to Sony's attorneys."  *Id*.

On May 19, 2022, Mr. Ubhaus sent both MABR and SIE the first volume of documents Ms. Gayner produced in response to the subpoena, without first providing them to MABR for review.   This consisted of approximately 605 documents (Volume I).   Veverka Decl. Ex. A, Docket No. 249.   On May 23, 2022, SIE's counsel notified MABR that they halted review of Ms. Gayner's production when they saw documents indicating that "Gayner may have had a financial relationship with ESC on matters related to SIE and this lawsuit."   *Id*. at 2.   SIE's counsel noted that MABR had previously represented in meet and confer discussions "that Ms. Gayner was solely ESC's attorney on matters that did not relate to SIE or this lawsuit, and that communications or information exchanged between ESC and Ms. Gayner that concerned SIE or the subject matter of this lawsuit are *not* privileged."  *Id*.  SIE asked MABR to confirm "that ESC is not claiming privilege over its communications with Ms. Gayner relating to SIE or the subject matter of this lawsuit."   *Id*. at 3.  MABR responded that they "do not recall having made" the statement that "Gayner served as ESC's attorney only for subject matter that did not relate to SIE and [ESC] would not assert privilege over questions and communications relating to SIE."  *Id*. at 2.   MABR wrote, "we think we have consistently stated that ESC, as holder of the attorney-client privilege, we would assert privilege where appropriate."  *Id*.

On July 28, 2022, SIE filed a motion to compel ("MTC") requesting that the Honorable Donna M. Ryu rule on ESC's claimed attorney-client and work product privilege over its

communications with Ms. Gayner.  Mot. to Compel, Docket No. 244.  Judge Ryu held that some of the communications were not privileged because they were not prepared in the anticipation of trial, but that the drafts of the 2020 Gayner Deposition were privileged by the work product protection.  Order on Def.'s Mot. to Compel, 20, Docket No. 277.

C.   The Motion to Disqualify

SIE has filed a motion to disqualify MABR from representing ESC.  SIE alleges that Ms. Gayner has a conflict of interest because she worked for SIE and ESC, two adversaries, in the same matter.  SIE argues that MABR should be disqualified because MABR induced Ms. Gayner to disclose SIE's confidential information, Ms. Gayner's conflict of interest is imputed to MABR, MABR's dealings with Ms. Gayner give rise to the appearance of impropriety, and MABR violated the duty of candor.

We examine each of these contentions in turn.

### III.   DISCUSSION

1.   Legal Standard

Lawyers appearing before this Court must "comply with the standards of professional conduct required of the members of the State Bar of California."  N.D. Cal. Civ. L.R. 11-4(a)(1).  Thus, "we apply state law in determining matters of disqualification."  *In re Cty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).  For a motion to disqualify, "the party seeking disqualification bears the burden of establishing the existence of a disqualifying conflict by a preponderance of the evidence."  *Board of Trustees of Leland Stanford Junior University v. Zhang*, 2023 WL 3577209 *3 (N.D. Cal. 2023).

"The right to disqualify counsel is a discretionary exercise of the trial court's inherent powers."  *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 918 (N.D. Cal. 2003).  Courts subject disqualification motions to "strict judicial scrutiny" because they present the threat of tactical abuse.  *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985).  In deciding a motion for disqualification, a court should consider "a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies

9

the disqualification motion." *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1145 (1999). However, "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *Id.* Thus, while the "drastic measure" of disqualification is "generally disfavored and should only be imposed when absolutely necessary," *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 814 (N.D. Cal. 2004), "[t]he important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *SpeeDee Oil*, 20 Cal. 4th at 1145. However, "where California law mandates automatic disqualification, the Court may not substitute a more lenient remedy." *Netlist, Inc. v. SK hynix Inc.*, 2016 WL 8905079, at *4 (C.D. Cal. 2016). To assess SIE's motion, the Court first looks to the ethical rules applicable to attorneys under California law.

In considering ethical violations, this Court is bound by Local Rule 11-4(a), which reads in pertinent part:

> Every member of the bar of this Court and any attorney permitted to practice in this Court under Civil L.R. 11 must: (1) Be familiar and comply with the standards of professional conduct required of members of the State Bar of California; … (4) Practice with the honesty, care, and decorum required for the fair and efficient administration of justice …

N.D. Cal. Civ. L.R. 11-4(a)(1).

2. Ms. Gayner's Conflict of Interest

Under the California Rules of Professional Conduct, it is an attorney's duty "to maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." CA Bus. & Pro. Code § 6068(e)(1). Therefore, the attorney "shall not reveal" such protected information. CRPC 1.6. After a representation ends, a lawyer must not use or reveal the protected information. CRPC 1.9(c)(1). Once a lawyer has represented a client, that lawyer "shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent." CRPC 1.9(a). It is well established that if an attorney is in a confidential relationship with one party, and then represents that party's adversary, that attorney must be disqualified. *Maruman Integrated Circuits, Inc. v. Consortium Co.*, 166 Cal.App.3d 443, 447 (1985).

1    As prior counsel for SIE, possessing confidential and privileged information, Ms. Gayner

2    should not have represented ESC in relation to the instant lawsuit with SIE.  Disqualification due

3    to successive representations of clients with adverse interests is required where there is a

4    "substantial relationship" between the subjects of the antecedent and current representations.

5    *Pound v. DeMera DeMera Cameron*, 135 Cal.App.4th 70, 76 (2005).  To determine whether there

6    is a substantial relationship between successive representations:

> A court must first determine whether the attorney had a direct professional relationship
> with the former client in which the attorney personally provided legal advice and services
> on *a legal issue that is closely related to the legal issue in the present representation*.  If
> the former representation involved such a direct relationship with the client, the former
> client need not prove that the attorney possesses actual confidential information.  Instead,
> the attorney is *presumed* to possess confidential information if the subject of the prior
> representation put the attorney in a position in which confidences material to the current
> representation would normally have been imparted to counsel.... When a substantial
> relationship between the two representations is established, the attorney is automatically
> disqualified from representing the second client.

12   *Advanced Messaging*, 913 F.Supp.2d at 906 (quoting *City & County of San Francisco v. Cobra*

13   *Solutions, Inc.*, 38 Cal.4th 839, 847-48 (2006).) (emphasis added).  This is "necessarily [a] fact-

14   dependent" inquiry, but courts need not "extensively analyze" the circumstances.  *Id*. at 908.

15   Instead, "a rational link between the subject matter of the two cases will suffice."  *Id*.  If an

16   attorney's successive representations were substantially related, the attorney's access to

17   confidential information in the first representation is presumed, and disqualification of the attorney

18   in the second representation is mandatory unless ethical screening was implemented in a timely

19   manner.  *Id*. at 911.

20   Here, before this court can address whether MABR should be disqualified due to its

21   communications with Ms. Gayner, several preliminary matters need to be established.  First, Ms.

22   Gayner had an attorney-client relationship with SIE and obtained SIE's confidential information.

23   From 1998 to 2007, Ms. Gayer worked as lead in-house counsel, as the Director of Legal and Business

24   Affairs for SIE.  Gayner Decl. ¶ 1.  On January 5, 1998, Ms. Gayner signed a non-disclosure agreement

25   ("NDA"), which was related to her employment at SIE.  Khachatourian Decl. Ex. 27, p. 8, Docket No.

26   317.  From 2007 to 2014, Ms. Gayner moved to SIE's business development department, where she

27   was the Director of Licensing.   *Id*.  To announce her transition, SIE issued a press release, saying

28   that Ms. Gayner had a "perfect blend of legal expertise and videogame industry knowledge" and

wrote about her prior experience with merchandise license agreements working in SIE's legal department.  Gayner Dep. 81:24-83:11; Ex. 32.  Ms. Gayner "establish[ed] the merchandise licensing program" and negotiated the merchants licensing agreements in that role.  Gayner Decl. ¶ 1; Gayner Dep. 72:6-9.  Regardless of Ms. Gayner's formal title, Ms. Gayner was an attorney for SIE, and she obtained their confidential information, therefore necessitating that she maintain their confidences under the attorney-client privilege.

Second, Ms. Gayner engaged in successive representations of clients with adverse interests in substantially related matters.  In the 2020 Gayner Declaration, which Ms. Gayner wrote in support of ESC's position, Ms. Gayner articulated her salient role at SIE in the ESC matter:

> Based on my experience as Sony's Director of Licensing, my creation of the merchandise licensing program, my negotiation of the 2014 ESC MLA, and my execution of the 2014 ESC MLA on behalf of Sony, I understand ████████████████████████
> ████████████████████████████████████████

Gayner Decl. 3.  This statement alone illustrates that Ms. Gayner represented SIE in executing the MLA with ESC and now supports ESC in their litigation against SIE with regard to the very MLA she negotiated.  Further, in Mr. Scarecrow's declaration, he stated that "Ms. Gayner did advise and assist ESC in connection with ESC's work and negotiations with [SIE]."  Erick Decl. at ¶ 8.  Additionally, in Ms. Gayner's work with ESC, Ms. Gayner created documents described as "attorney notes outlining ████████████████████████" and "attorney notes regarding investigation relating to potential dispute with Sony."  Annotated Volume II Log at 5.  Ms. Gayner, despite her assertion at one point that she was only helping a friend, plainly had an attorney-client relationship with ESC in connection with the dispute with SIE.  And clearly, there is a substantial relationship between Ms. Gayner's work at SIE and her work with ESC.  Therefore, Ms. Gayner had a duty to keep the confidences of SIE.  Her subsequent work with ESC on a substantially similar matter created a conflict of interest.

3. Imputation

The next question is whether Ms. Gayner's conflict and improper representation of SIE and then ESC can be imputed to MABR.  SIE argues that Ms. Gayner's conflict of interest,

representing ESC materially adverse to SIE on a substantially similar matter, is imputed to MABR because they have worked directly with Ms. Gayner on the declaration and therefore are presumed to have had access to SIE's confidential information.  Mot. to Disqualify, 21-22.  ESC counters that Ms. Gayner does not have a conflict of interest because she has never appeared as counsel in this action, and, if she does have a conflict, it cannot be imputed to MABR because she was never counsel of the firm.  Opp'n, 18-19.  The case law supports SIE's interpretation.

When an attorney is prohibited from sharing their client's confidential information, their law firm is presumed to possess the same confidential information as the attorney, imputing the attorney's conflict to the entire firm.  *Advanced Messaging Techs.*, *Inc. v. EasyLink Services Intern. Corp.*, 913 F.Supp.2d 900, 909 (C.D. Cal. 2012).  Co-counsel in an action can also impute conflicts to one another, even if co-counsel are not part of the same firm.  *Id*.  In *Advanced Messaging Techs.*, an attorney ("Attorney") worked at a company called j2.  After the Attorney left j2, j2 filed an action against Open Text, who hired Perkins Coie as their counsel.  Subsequently, Open Text hired the Attorney as their in-house counsel.  *Id*. at 904.  The Attorney cleared the conflicts check saying he did not recall having access to j2's confidential information.  However, the court found that he spent hundreds of billable hours working on j2 patent issues, which were involved in the present matter.  *Id*. at 903.  As counsel for Open Text, the Attorney met with Perkins on a number of occasions.  *Id*. at 905.  Because Perkins worked with the Attorney who had a conflict of interest in the present matter, the Attorney's conflict was imputed to Perkins and Perkins was disqualified, even though the Attorney and Perkins were not formally co-counsel on the matter.

Likewise, here, Ms. Gayner was SIE's counsel and she negotiated and entered into the MLA with ESC on behalf of SIE, which is the contract at issue in this action.  Now, Ms. Gayner is ESC's outside counsel.  She has advised ESC on SIE-related matters and worked directly with MABR on the Gayner Declaration.  Like in *Advanced Messaging Tech.*, because MABR worked on behalf of ESC with Ms. Gayner, her conflict is imputed to MABR.  As *Advanced Messaging Techs.*, *Inc.* demonstrates*,* MABR and Ms. Gayner do not need to formally be co-counsel for Ms. Gayner's conflict to be imputed to MABR.  Her role was functionally equivalent to that of a co-

counsel role.

Indeed, this case presents a clearer circumstance for disqualification than in *Advanced Messaging Tech.* There, the sharing of confidential information was presumed because the Attorney and Perkins met several times. *Id.* Here, even though the presumption of confidential information should obtain given the "substantial relationship" between the subjects of the prior and current dispute, that presumption is not needed here, because confidential information was *in fact* shared; there is incontrovertible evidence that Ms. Gayner shared with ESC's counsel SIE privileged information obtained by virtue of her position as SIE's in-house lawyer. In the 2020 Gayner Declaration, which Ms. Gayner drafted with MABR, Ms. Gayner explained on behalf of ESC:

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

Gayner decl. 3-4. Ms. Gayner states when and how MLAs were used and why ██████████████ ████████████████████████████, facts informed by her experience negotiating and effectuating MLAs as SIE's in-house lawyer. Ms. Gayner's insider knowledge about the innerworkings of SIE's MLAs gained from her role as counsel for SIE is clearly privileged information that should not have been shared with SIE's adversary, ESC, and its counsel, MABR.

Pound is also instructive. In *Pound*, several employees of an accounting corporation, DDC, terminated their employment, formed their own firm, and sued DDC, their former employer. 135 Cal.App.4th at 73. DDC's in-house counsel, Mr. Smith, advised DDC's shareholders to seek personal counsel. *Id.* at 74. On behalf of the shareholders, Mr. Smith interviewed Peter S. Bradley for the position. Their interview lasted one hour, and they discussed the case in specific terms, covering topics that suffice as work product. *Id.* Mr. Bradley did not get the job. Subsequently, Mr. Jones, who represented the plaintiff employees, asked Mr. Bradley to join as co-counsel. *Id.* When DDC challenged Mr. Bradley's association in the litigation, Mr. Bradley's conflict was imputed to Mr. Jones and both were disqualified. *Id.* at 77. The court said, "it is impossible to conceive a justification for not disqualifying Jones when he consulted with

United States District Court
Northern District of California

1    Bradley, an attorney who obtained the opponent's confidences, *even if Bradley never associated*

2    *into the case.*" *Id*. at 78-79.

3         Although *Pound* is distinguishable from the present case because Mr. Bradley became co-

4    counsel for the adverse party whereas Ms. Gayner is not co-counsel with MABR in the present matter,

5    Pound is nonetheless instructive.  The *Pound* court said, "it is impossible to conceive a justification

6    for not disqualifying Jones when he consulted with Bradley, an attorney who obtained the

7    opponent's confidences, *even if Bradley never associated into the case.*" *Id*. at 78-79 (emphasis

8    added).  Thus, formal association or entry of appearance as litigation co-counsel is not necessary.

9    As in *Pound,* if counsel, MABR, consults with an attorney who has obtained the opponent's

10   confidences by virtue of that attorney's prior representation, MABR should be disqualified from

11   the matter.  In sum, as in *Pound* and *Advanced Messaging Technologies*, ESC's counsel, MABR, must

12   be disqualified.

13         4. Appearance of Impropriety

14        The 2010 Model Rules of Professional Conduct promulgated Canon 9, which said that "a

15   lawyer should avoid even the appearance of professional impropriety."  Model Code of Pro. Resp.

16   Canon 9 (Am. Bar Ass'n 2010).  Since 2010, the appearance of impropriety standard no longer

17   appears in the Model Rules, but it can still be a basis for disqualification in federal court.  The

18   Ninth Circuit recently held the appearance of impropriety can be the grounds for disqualification,

19   when the "circumstances are extreme, i.e., when the alleged impropriety is clear, affects the public

20   view of the judicial system or the integrity of the court, and is serious enough to outweigh the

21   parties' interests in counsel of their own choice."  *Legacy Villas at La Quinta Homeowners Ass'n*

22   *v. Context Homes*, 626 Fed.Appx. 679, 683 (9th Cir. 2015) (quoting *Optyl Eyewear Fashion*

23   *Intern. Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1049 (9th Cir. 1985).  Indeed, though the

24   appearance of impropriety standard is no longer in the Model Rules, and "California has neither

25   adopted the ABA Code or Rules nor has its own such standard, the Code and case law illustrates

26   that federal courts have the inherent power to apply it."  *In re AFI Holding, Inc.*, 355 B.R. 139,

27   153 n.15 (B.A.P. 9th Cir. 2006).

28        The California Rules of Professional Conduct do not specifically address the appearance of

impropriety.  California state case law does not allow disqualification based solely on the appearance of impropriety.  Instead, in California, the impropriety needs to "arise in connection with a tangible dereliction."  *Gregori v. Bank of Am.*, 207 Cal.App.3d 291, 306 (1989).

The appearance of impropriety rule has been likened to a current Model Rule, 8.4, which provides that "it is professional misconduct for a lawyer to … engage in conduct that is prejudicial to the administration of justice."  *Orange County Apartment House Ass'n v. City of Santa Ana*, 2023 WL 4681575 *5 (C.D. Cal 2023); California Rules of Pro. Conduct. R. 8.4(d); Model Rules of Pro. Conduct. R. 8.4(d).  The Restatement (Third) of the Law Government Lawyers notes that Rule 8.4 was "written broadly both to cover a wide array of offensive lawyer conduct and to prevent attempted technical manipulation of a rule stated more narrowly."  Restatement (Third) of the Law Government Lawyers § 5 cmt. C.  "Even when a court has by local rule 'incorporated an external set of disqualification standards,' the 'court may still use its inherent authority to disqualify counsel or a firm for reasons beyond those in the incorporated rules.'"  *Orange County Apartment House Association*, 2023 WL 4681575 at *2 (quoting *In re Maxus Energy Corp.*, 49 F.4th 223, 227 n.1 (3d Cir. 2022)).

In *Cargill Inc. v. Budine*, Matthew Budine was a general manager for Cargill, Inc.  2007 WL 1813762 *3 (E.D. Cal. 2007).  After a class action was filed against Cargill, Mr. Budine discussed and helped in the preparation of Cargill's defense.  *Id*. at *11. One of the class members, John Burford, was represented by counsel, Roy S. Payne.  Subsequently, Mr. Budine left Cargill, and Cargill sued Mr. Budine.  Mr. Budine hired Mr. Payne as counsel.  Cargill successfully argued that Mr. Payne should be disqualified as Mr. Burford's counsel based on Canon 9.  The Eastern District of California's local rules provided that where the California Rules of Professional Conduct are inapplicable, the court can consider the ABA Model Code of Professional Responsibility for guidance.  *Id*. at *7.  The court also cited a local rule, which stated, "no attorney admitted to practice before this Court shall engage in any conduct which degrades or impugns the integrity of the Court or … interferes with the administration of justice therein."  *Id*.  The court could not disqualify Mr. Payne under conflict of interest rules, because Mr. Budine was not an attorney.  Instead, the court relied on a Ninth Circuit opinion stating that districts who cite the

United States District Court
Northern District of California

ABA Model Rules in their local rules may apply Canon 9 as the basis for a disqualification motion. *Id.* at \*10. The court went on the say that "even in a district where the local rules no longer cite to the Model Code, the Ninth Circuit recently ruled" that though the appearance of impropriety standard was eliminated from the Model Code and not contained in the district's local rules, "federal courts have the inherent power to apply it." *Id.* at \*10-11. The Eastern District of California did apply that power given the presumption that Budine participated in privileged communications and the resulting prejudice to Cargill in the litigation. If Mr. Payne were permitted to continue representing Mr. Burford and Mr. Budine, "the dangers of a detrimental continuing effect on this litigation are great." *Cargill*, 2007 WL 1813762 at \*13.

In another case relying upon the appearance of impropriety, *Hull v. Celanese*, a law firm was disqualified after a lawyer for one company subsequently switched sides. 513 F.2d 568 (2d Cir. 1975). In that case, Joan Hull and Donata A. Delulio worked for the company, Celanese. *Id.* at 570. Ms. Delulio was in-house counsel. *Id.* Ms. Hull filed charges against Celanese alleging sex-based discrimination in employment and hired the Rabinowitz firm. *Id.* Ms. Delulio was assigned to work on Celanese's defense. *Id.* Ms. Delulio subsequently quit her job and joined Ms. Hull as a plaintiff, alleging sex-based discrimination against Celanese. *Id.* The court reasoned that the Rabinowitz firm must be disqualified because the situation is no different than if Ms. Delulio had joined the Rabinowitz firm as counsel in the case. *Id.* at 572. Further, the matter at issue was not just "substantially related" to the previous representation, it was the exact same litigation. *Id.* at 571.

Here, Ms. Gayner's work with SIE, ESC, and MABR gives rise to the appearance of impropriety. In *Cargill* and *Hull*, the conflicted persons had high positions at their former companies and had repeated discussions with the company counsel pertaining to the defense of the pending case. Similarly, here, Ms. Gayner had a high position at SIE as the Director of Legal and Business Affairs and as the Director of Licensing, created the licensing program which ESC contracted into, and negotiated the MLA at issue in this case. In *Cargill* and *Hull*, the conflicted persons subsequently became clients of their former company's adversary firm, and the courts disqualified the firms, assuming that privileged information was shared. Here, Ms. Gayner

17

became outside counsel for ESC and worked directly with MABR which represented ESC; together, they created the 2020 Gayner Declaration in order to advocate for ESC's position in this litigation.  In working with MABR in its representation of ESC, as noted above, Ms. Gayner shared privileged information as evidenced, *inter alia*, by the 2020 Gayner Declaration.  Further, as in *Hull*, the matter at issue here is not just "substantially related" to the previous representation, it is the exact same litigation.  *Id*. at 571.

Even though Ms. Gayner did not formally associate with MABR as co-counsel or formally become MABR's client in this matter, she worked with MABR when creating the 2020 Gayner Declaration and in providing advice and counsel in connection with this case.  Although the ABA and the California Rules of Professional Conduct do not explicitly address this particular scenario, it would be "prejudicial to the administration of justice" to construe the rules narrowly and permit MABR to continue to litigate this matter having purposefully and wrongfully obtained privileged information from Ms. Gayner.  California Model Rules of Pro. Conduct. R. 8.4(d); Restatement (Third) of the Law Government Lawyers § 5 cmt. C.  As "[s]uch information as [MABR] may have learned … cannot be unlearned." *Cargill*, 2007 WL 1813762 at *13, the Court exercises its inherent power (as an additional ground) to disqualify MABR from further representation herein.

### 5. Duty of Candor

"A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." RPC 3.3(a)(1).  Further, "a lawyer shall not offer evidence that the lawyer knows to be false.  If a lawyer . . . offers material evidence, and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal."  CRPC 3.3(a)(3).  When an attorney violates their duty of candor to the tribunal, the court may impose sanctions, public reproval, or disqualification.  *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) (imposing sanctions); *Di Sabatino v. State Bar*, 27 Cal. 3d 159, 164 (1980) (imposing public reproval); *In re Spikes*, 837 Fed.Appx 469, 471 (9th Cir. 2020) ("[The attorney's] lack of candor with the courts … was a sufficient basis for disqualification.").  In *Allstate Ins. Co. v. Inscribed PLLC*, a law firm was disqualified for

improperly engaging the opposing party outside the presence of his counsel and subsequently lying about it.  571 F.Supp 823, (E.D. Mich. 2021).  There, the court said, "it is clear that a district court properly exercises its inherent power [to supervise the conduct of attorneys before them] when it uses that power to disqualify an attorney who has made material misrepresentations to the Court."  *Id.* at 835.

MABR has not been forthcoming with the Court.  ESC, through MABR's representation, has repeatedly changed positions regarding their relationship with Ms. Gayner, positions which are completely at odds with each other.

After ESC filed the 2020 Gayner Declaration, SIE filed a motion to strike the declaration. ESC opposed the motion to strike, saying that "Gayner is not attempting to represent ESC in this action and is thus not accepting representation adverse to SIE."  Opp'n Mot. to Strike, 10, Docket No. 105.  Additionally, they argued, "ESC's contact with Gayner does not put ESC's counsel in a position to disclose or use SIE's privileged information to assist ESC.  In other words, *Gayner has no knowledge of this action*."  *Id.* at 9 (emphasis added).

In 2020, after ESC filed the 2020 Gayner Declaration, SIE emailed MABR to obtain more information.  Khachatourian Decl. Ex. A, Docket No. 109.  In response, MABR said "we will be representing Shelly Gayner in this matter."  *Id.*  SIE protested this representation and MABR agreed to decline representing Ms. Gayner to avoid disputes, but said, that with regard to ESC and Ms. Gayner, "there was absolutely no confidential information, attorney-client communications, or attorney work product shared."  *Id.*

Subsequently, on June 3, 2021, ESC identified Ms. Gayner as a witness likely to have information relevant to the case:

Shelly Gayner is believed to have discoverable information about: ███████████████
████████████████████████████████████████████████

Khachatourian Decl. Ex. 17 ¶ 20, Docket No. 245.

Later, SIE asked ESC to "identify each person employed by ESC or retained by ESC as counsel" who communicated with any third party about ESC's dispute with SIE and/or this action. Khachatourian Decl. Ex. 6, Docket No. 245.  ESC identified "Innes Smolansky, Shelly Gayner,

19

1    and counsel of record in this action." *Id.*   Subsequently, the parties met and conferred regarding the

2    deposition topic of Ms. Gayner.  Afterwards, SIE's counsel wrote to MABR:

> During a meet and confer on May 2nd, ESC represented that Ms. Gayner was solely ESC's attorney on matters that did not relate to SIE or this lawsuit, and that communications and information exchanged between ESC and Ms. Gayner that concerned SIE … are *not* privileged.  SIE memorialized this representation in a May 12 letter, and ESC has now, two weeks later, not disputed SIE's characterization of ESC's position.

6    Veverka Decl. Ex. A, Docket No. 249.  MABR responded saying "we do not recall having made

7    that broad of a statement … we think we have consistently stated that ESC, as holder of the

8    attorney-client privilege, would assert privilege where appropriate."  *Id.*

9          Subsequently, in Mr. Scarecrow's declaration, he stated that in 2017 he "engaged Ms. Gayner

10   to provide legal advice and counsel to ESC in a variety of matters, including the drafting and

11   preparation of general agreements involving ESC's intellectual property, as well as the negotiation

12   and finalization of contracts between ESC and third parties," and that "much of that work did not

13   involve SIE."  Erick Decl. ¶ 6, Docket No. 240.  That representation implicitly concedes that Mr.

14   Gaynor did *some* work which *did* involve SIE.  Indeed, Mr. Erick acknowledges that "[a]s part of

15   her engagement by ESC, Ms. Gayner did advise and assist ESC in connection with ESC's work

16   and negotiations with [SIE]."  *Id.* at ¶ 8.  According to Mr. Scarecrow, Ms. Gayner both

17   collaborated with or worked under the direction of ESC's "outside 'general' counsel," Innes

18   Smolansky, and "periodically provided direct legal counsel to ESC when Ms. Smolansky was

19   otherwise unavailable."  *Id.* at ¶¶ 4, 7.  Mr. Scarecrow further stated that Ms. Gayner invoiced

20   ESC "for the legal services she rendered" and ESC paid those invoices.  *Id.* at ¶ 9.  Mr. Scarecrow

21   stated that "[f]rom [his] perspective (and necessarily that of ESC), from approximately August

22   2017 until the present, Ms. Gayner has been engaged as an outside attorney for ESC, providing …

23   legal services and counsel."  *Id.* at ¶ 10.  In a declaration, MABR attorney Sterling A. Brennan

24   said, "I am informed and believe that Shelly Gayner ("Gayner") has served as an outside attorney

25   for, and advisor to, ESC (*see* Declaration of [Mr. Scarecrow]…).  Brennan Decl. ¶ 4, Docket No.

26   295.

27        In sum, MABR and ESC have breached their duty of candor.  MABR and ESC have

28   repeatedly changed their position regarding their relationship with Ms. Gayner, claiming that Ms.

United States District Court
Northern District of California

1     Gayner "has no knowledge of this action" and yet admitting that Ms. Gayner has provided ESC

2     with legal advice for their litigation with SIE.  *See* Docket No. 105 at 9.  Additionally, MABR said

3     that there was "absolutely no confidential information … shared" yet subsequently claimed that

4     their communications with Ms. Gayner as to SIE were privileged.  Khachatourian Decl. Ex. A,

5     Docket No. 109.  MABR breached the duty of the candor owed to the court, and this provides

6     another basis for disqualification of the firm.  *In re Spikes*, 837 Fed.Appx at 471.

7           6. Prejudice

8           As previously discussed, "an order of disqualification of counsel is a drastic measure,

9     which courts should hesitate to impose except in circumstances of absolute necessity."  *In re*

10    *Marvel*, 251 B.R. 869, 871 (N.D. Cal. 2000).  A court must balance varied interests such as "a

11    party's right to chosen counsel, the interest in representing a client, the burden placed on a client

12    to find new counsel, and the possibility that 'tactical abuse underlies the disqualification motion.'"

13    *Gotham City Online, LLC v. Art.com, Inc.*, 2014 WL 1025120 *2 (N.D. Cal. 2014).  In this

14    determination, a court may give heed to a "showing that [MABR] is uniquely suited to represent

15    [ESC], or that other counsel is unavailable."  *Orange County Apartment House Association*, 2023

16    WL 4681575 at *5 (quoting *William H. Raley Co., Inc. v. Superior Ct.*, 197 Cal. Rptr. 232, 235

17    (Cal. Ct. App. 1983)).  Other jurisdictions also evaluate "the [victimized party's] interest in the

18    trial free from the risk of even inadvertent disclosures of confidential information."  *Hull v.*

19    *Celanese Corp*, 513 F.2d 568, 570 (2d Cir 1975); *Meat Price Investigators Ass'n v. Spencer Foods*

20    *Inc.*, 572 F.2d 163, 165 (8th Cir. 1978) ("the opposing party's interest in a trial free from prejudice

21    due to disclosures of confidential information.").

22          Here, SIE will be prejudiced in this litigation because MABR has obtained privileged

23    information about ███████████████████████, which is the subject of this litigation.

24    Further, MABR may have received more privileged or confidential information from Ms. Gayner

25    when drafting the 2020 Gayner Declaration or in other discussions with her given that she served

26    as and continues to serve as outside counsel for ESC.  ESC has not produced any showing that

27    MABR is uniquely situated to represent their interests nor that other counsel is unavailable to

28    represent it.  To be sure, ESC has shown that they have made a big investment in retaining MABR

and that MABR has devoted substantial resources to this litigation.  Opp'n 24.  Indeed, this action

was initiated three and a half years ago on April 22, 2020, and MABR has spent more than 3,200

attorney and paralegal hours on this action and has advanced more than $76,000 in costs and

expenses.  *Id*. at 25; Brennan Decl. ¶ 15.  Though it will be burdensome for ESC to retain new

counsel and for their future counsel to get caught up in this matter, that burden does not outweigh

the substantial prejudice that MABR's retention in this matter will perpetuate.

### 7. Waiver

ESC claims that SIE has waived its right to seek MABR's disqualification due to an

unreasonable delay.  Opp'n 23.  ESC says that SIE cannot seek to disqualify MABR based on any

conduct or omission by Ms. Gayner because SIE knew of Ms. Gayner's involvement in the case

since the 2019 Gayner Letter and the 2020 Gayner Declaration.  *Id.*  ESC's argument lacks merit.

As soon as SIE learned of Ms. Gayner's improper involvement in the proceedings with

MABR, they timely moved to investigate.  SIE knew that Ms. Gayner was involved with ESC

since the 2019 Gayner Letter and the 2020 Gayner Declaration, but they did not know that Ms.

Gayner was involved with MABR until Ms. Gayner's deposition on June 12, 2022.  There, Ms.

Gayner testified that ESC's attorneys at MABR drafted the declaration, that she made changes to

the initial draft, and that the declaration went through two to three drafts before she signed it.

Gayner Dep. 117-20.  She also testified that she exchanged emails with MABR's attorneys and had

at least one phone call with them regarding the declaration.  *Id*. at 120-21.

On July 13, 2022, the parties filed a joint stipulation requesting an order for a limited stay

of the case, which was granted.  The parties stipulated that SIE believed they had a good faith

basis to assert that MABR should be disqualified, which is a basis to stay the case and "to permit

the adjudication of … Sony's possible motion to disqualify ESC's counsel."  Stip. For Limited

Stay of Case, Docket No. 239.  To investigate the Ms. Gayner's relationship with ESC and

MABR, on July 28, 2022, SIE filed a motion to compel.  It requested communications and drafts

regarding the 2019 Gayner Letter, communications and drafts regarding the 2020 Gayner

Declaration, and other ESC-Ms. Gayner communications for which ESC had claimed were

protected by the attorney-client privilege.  Mtn to Compel at 1, Docket No. 244.  Judge Ryu's

United States District Court
Northern District of California

1    order on the motion was filed on January 30, 2023, where Judge Ryu ruled that MABR's drafts for

2    the 2020 Gayner Declaration were privileged.  Docket No. 277.  In subsequent status conferences

3    with Judge Chen, on February 21, 2023, and April 25, 2023, SIE discussed the timing of their

4    filing the motion to disqualify and stated that they were waiting until discovery issues were

5    resolved before filing.  Docket No. 283; Docket No. 293.

6            SIE did not delay their motion to disqualify.  As soon as SIE got a clear answer about

7    MABR's role in creating the 2020 Gayner Declaration, they timely sought to stay the case to

8    investigate Ms. Gayner's role in the litigation and articulated that they believed disqualification

9    was warranted.  Afterwards, they timely represented to the Court their intention to file a motion to

10   disqualify.  SIE prosecuted the issue with reasonable diligence.  Its efforts to get to the bottom of

11   the issue was complicated, if not obfuscated, by ESC's repeated change in positions and

12   representations.  Therefore, ESC's waiver argument is without merit.

13           8. Standing

14           ESC claims that Sony has failed to establish standing to bring a motion to disqualify

15   MABR.  Opp'n 14.  In ESC's only cited case to support this contention, *Moreci v. Scaffold Sols.,*

16   *Inc.*, an employer intervened in its employee's litigation with a scaffolding company after the

17   employee was injured on the scaffolding.  70 Cal. App. 5th 425, 438 (2021).  The firm Boxer

18   Gerson was counsel for the employee against the scaffolding company.  *Id*.  After settling the case

19   with the employee, Boxer Gerson assumed the scaffolding company's defense, pursuant to an

20   indemnification provision in opposition to the intervening employer.  *Id*.  The employer filed a

21   motion to disqualify Boxer Gerson from switching sides, but the court held that the employer

22   lacked standing to do so.  *Id*. at 436.  The court said that "a party moving to disqualify must have a

23   legally cognizable interest that would be harmed by the attorney's conflict of interest."  *Id*. at 432.

24   Conversely, here, SIE undoubtedly has a legally cognizable harm in their former employee's

25   collusion with their adversary in litigation.  SIE clearly has standing to pursue this claim.

26           9. Judicial Estoppel

27           ESC argues that, under the doctrine of judicial estoppel, SIE should be barred from arguing

28   that Ms. Gayner was improperly involved with ESC because SIE has taken an inconsistent

                                                  23

1    position in the present litigation.  In SIE's motion to compel, SIE argued that the 2019 Gayner

2    Letter was not privileged because, in the letter, Ms. Gayner stated that she was not ESC's lawyer,

3    but instead, Mr. Scarecrow's "personal friend."  Mot. to Compel, 3.  Additionally, SIE argued that

4    the 2020 Gayner Declaration was not privileged because Ms. Gayner "submitted [it] in her

5    individual capacity as a non-party and friend."  *Id*. at 9.  Now, SIE argues that Ms. Gayner is

6    ESC's lawyer and that her conflict is imputed to MABR.

7            Judicial estoppel is an equitable doctrine designed to "protect the integrity of the judicial

8    process" and "prevent the improper use of judicial machinery."  *Continental Casualty Co. v.*

9    *Chatz*, 591 B.R. 396, 411 (N.D. Cal. 2018) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-

10   50 (2001)).  It serves to "prohibit a party from prevailing in one phase of a case on an argument

11   and then relying on a contradictory argument to prevail in another phase."  *Id*.  The Ninth Circuit

12   "invokes judicial estoppel not only to prevent a party from gaining an advantage by taking

13   inconsistent positions, but also because of general considerations of the orderly administration of

14   justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing

15   fast and loose with the courts."  *Id*. (quoting *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d

16   788, 792 (9th Cir. 2001)).

17           Here, judicial estoppel does not apply because SIE changed positions in reliance upon

18   MABR and ESC's change of positions as to their relationship with Ms. Gayner.  If either party

19   here is engaging in an "improper use of the judicial machinery," it is MABR, who has consistently

20   taken different positions regarding Ms. Gayner's involvement in the case.  *Chatz*, 591 B.R. at

21   411.  SIE cannot be said to "gain an advantage by taking inconsistent positions," when those

22   changes were occasioned by MABR.  *Id*.  Moreover, SIE's change in position created no

23   demonstrable prejudice to MABR in connection with the motion at hand.  This Court, in ruling as

24   it has herein, does not rely on SIE's characterization of Ms. Gayner's role; it relies on the facts of

25   her role.

26                              **IV.    <u>CONCLUSION</u>**

27           For the reasons stated above, MABR is disqualified from this matter, and ESC must find

28   new counsel.  ESC's new counsel may not have access to the same improperly obtained privileged

and confidential information that created the basis for MABR's disqualification.  To address this issue, before ESC hires new counsel, MABR and SIE shall meet and confer to come up with appropriate language for a protective order.  MABR may represent ESC for this limited purpose. The language must be submitted to the Court by December 18, 2023.

After MABR meets with SIE to discuss the terms of the protective order, MABR is disqualified from this matter.  ESC will have 90 days from the date of this Order to find counsel and to have new counsel enter an appearance.  After 90 days, the stay will be lifted.

**IT IS SO ORDERED**.

Dated: November 27, 2023

_____
EDWARD M. CHEN
United States District Judge